## JAMES SPEAR STOVE & HEATING CO. v. GENERAL ELECTRIC CO. et al.

### No. 17220.

District Court, E. D. Pennsylvania.
Sept. 12, 1934.

Henry B. Coxe, Jr., Harry L. Schimpf, Jr., and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., for plaintiff.

Jackson Wheatley and Howard Burtt, both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

In this case the plaintiff brought an action for damages, in the nature of a common-law action on the case for deceit, against two corporations, General Electric Company and Penn Heat Control Company, the latter of which may fairly be called a subsidiary of the former. The cause of action alleged was that the plaintiff had been induced by certain false representations to take a distributor's contract for the sale in specified territory of automatic heat control devices for home heating, that the business proved a failure, and that the plaintiff lost a considerable sum of money as a result.

The jury returned a verdict in favor of one defendant, Penn Heat Control Company, but against General Electric Company, the other, in the amount of $14,881.69.

The plaintiff's contract was made with Penn Heat Control Company. All the representations constituting the plaintiff's cause of action were made to the plaintiff by representatives of that concern. There was no evidence to fix any responsibility upon General Electric Company for any of the oral statements which were made at that time. The only theory upon which it could be held was that it had approved and placed in the hands of its subsidiary for general use certain printed advertising matter which was shown to the plaintiff in the course of the negotiations leading up to its unfortunate contract. This consisted of three items. They were:

978

1. A pamphlet, entitled, "Publicity Procedure for Dealers and Distributors." This may be dismissed from consideration at once, since there was no proof whatever of its origin with or authorization by General Electric Company.

2. A prospectus. This contained a number of representations which bear directly upon the availability of the device for sale and which might (although this is not decided) be sufficiently definite to form the basis of an action for deceit. The trouble with this feature of plaintiff's case, however, is that there is really no evidence from which a jury should have been permitted to infer that the prospectus was authorized or approved by any one with authority connected with General Electric Company. I submitted this question to the jury, but after careful examination of the evidence I am satisfied that I should not have done so.

Summarized, the testimony upon this point amounts to this: In the early part of April, 1931 (the plaintiff's contract was made on September 20th of that year), Mr. Reilly, president of Penn Heat Control Company, had a conference with Mr. Swope, president of General Electric Company, at which time there was discussed "the original lay-out of the advertising," whatever that may mean. It was suggested that the device be given the name "Temperator" and, "on that question," Mr. Swope referred Mr. Reilly to Mr. Quinn, vice president in charge of merchandising electric apparatus for homes. Mr. Quinn suggested that Mr. Reilly attend a meeting of the appliance committee of General Electric Company, for what purpose does not appear. At the meeting of the appliance committee, it was suggested that Mr. Reilly go to Cleveland to meet a Mr. Zimmerman. Mr. Zimmerman was chairman of the appliance committee and was also manager of the refrigerator department. The purpose of going to Cleveland was to make arrangements to have this heat control device placed for sale with the General Electric distributors who were already selling refrigerators. Mr. Reilly went to Cleveland twice. At the second meeting he took with him the prospectus in question which had been prepared at the instance of his company by an advertising agency. In the course of the interview, he delivered it to Mr. Zimmerman who in turn mailed it out to the refrigerator distributors with a personal letter commending the device to their consideration. There was no testimony as to the extent of Mr. Zimmerman's authority with regard to the approval of the advertising matter. I do not think such authority can be inferred from the mere fact that he was manager of the refrigerator department and chairman of the appliance committee, since there is no evidence to indicate what duties or powers these positions carry with them. There is a suggestion that the prospectus had also been submitted to the publicity department, but if this be read carefully, it will be seen that the witness was not testifying to any fact of which he had knowledge.

The court of common pleas of Philadelphia county apparently had the same question before it in a suit brought by another distributor and that court entered a nonsuit on the grounds just discussed. The court in its opinion said, "Nowhere does it appear that Mr. Zimmerman had any authority to act for the General Electric Company in the approval of the prospectus; on the contrary, Mr. Reilly testified that Mr. Swope, at that time President of the General Electric Company, was the final arbiter in such matters."

As a result of this failure of evidence as to authority, the prospectus must be eliminated as an element in the plaintiff's cause of action.

3. The third advertising item submitted was a large Blue Book introducing the product, and containing, in addition to a description of the advantages, copies of advertisements which had already appeared in the Saturday Evening Post and many other magazines, together with copies of direct mailing pieces which were to be sent out to prospective customers, dealers, etc. There is no question that the make-up of this book was passed upon and approved by Mr. Swope, and therefore General Electric Company can be held responsible for whatever it contained. However, a careful examination of the matter contained in the advertising broadside does not in my judgment disclose any statement of fact upon which an action for deceit can be founded. It is elementary that mere commendatory statements called "dealer's talk" or "trade talk" are not actionable, because these are generally regarded as mere expressions of opinion not likely to be very strongly relied upon, especially where the parties deal upon equal terms. Of course, the dealer's immunity from responsibility for such

statements is not absolute, and a number of recent decisions seem to go a considerable distance in cutting it down. An example is Iowa Economic Heater Co. v. American Economic Heater Co. (C.C.) 32 F. 735, cited by the plaintiff. The limits of such immunity are not sharply defined and whether in any given case a misrepresentation is or is not actionable must depend upon the particular circumstances involved.

The introductory pages of the Blue Book contain statements that the new heating regulator has exclusive features which place it "far beyond competitive devices in quality of manufacture, dependability and precision of operation" and that in it there is the "same mechanical dependability that distinguishes all other products bearing the G E monogram." The copies of advertisements which appear say that it functions with "a precision unequaled in this type of equipment"; that the General Electric name has always been an assurance of "mechanical excellence and operative dependability." There is a graph reproduced which compares the room temperature under General Electric control with that of an ordinary thermostat from which it appears that the former varies less than one degree during a period of three hours' operation.

Now it may be conceded that the device did not work satisfactorily. Whether it was far beyond other competitive devices in quality, dependability, and precision, or whether it was as dependable as other General Electric products does not appear. "Mechanical excellence" is necessarily comparative and largely a matter of opinion. The graph might be construed as representing as a fact that the device was capable of maintaining a constant temperature, but even so, there is no evidence that there was any serious shortcoming in this particular or that such as there was had much to do with the breakdown of the plaintiff's sales campaign. There is no evidence of complaints as to slight variations beyond one degree where the installations were otherwise dependable.

The real difficulty lay in numerous mechanical defects which caused constant trouble, but it must be borne in mind that the gist of this action is not selling defective goods, but making false statements of fact. I am of the opinion that the general commendatory statements in the advertising matter were not such representations as would form a basis for action.

As Judge Hand pointed out in Vulcan Metals Co., Inc., v. Simmons Mfg. Co. (C. C.A.) 248 F. 853, the cases in which the plaintiff is justified in relying upon such expressions of opinion, and might bring action if deceived by it, are generally cases in which the parties are not dealing upon equal grounds. In the case at bar the plaintiff's officers were experts in the business. The plaintiff urges that because a speedy decision was required of them they were at a disadvantage and accepted at face value much of the recommendation which otherwise would have been tested; but as a matter of fact all that appears about this is the testimony of the plaintiff's president to the effect that "there were two or three factors which made it imperative that we should reach a decision as soon as possible. One was that this advertising had all been broken and they wanted to get organized, a sales organization set up to sell the heat regulator. Now, also, we understood that there was somebody else interested in the distributorship that was offered to us, * * * but, naturally, they wanted a decision as soon as possible, so Mr. Trump and myself said that we would try to reach a decision as soon as we could, and if it was favorable get to work. * * *

"The question of investigating and substantiating the market for heat regulators would require some study, would require an organization beyond our resources to investigate, and General Electric supposedly had done all that work, they had made the surveys and, naturally, we decided that within reason their statements must be—some facts behind them."

I am of the opinion that under all the law and evidence a verdict for the defendant should have been directed and for that sole reason a motion for a new trial is now granted.