CLOSED CIRCUIT CORPORATION
OF AMERICA

v.

JERROLD ELECTRONICS
CORPORATION.

Civ. A. No. 75–3494.

United States District Court,
E. D. Pennsylvania.

Jan. 25, 1977.

Sidney M. Eisenberg, Eisenberg & Kletzke, Milwaukee, Wis., H. Craig Lewis, Feasterville, Pa., for plaintiff.

William J. Taylor, Joseph A. Torregrossa, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

## MEMORANDUM

McGLYNN, District Judge.

This is a diversity action between Closed-Circuit Corporation of America ("Closed-Circuit"), a California corporation with its principal place of business in Illinois and Jerrold Electronics Corporation ("Jerrold"), a Delaware corporation licensed in Pennsylvania to manufacture Community Antenna Television (CATV) equipment and doing business in the Commonwealth relating to the construction and installation of Closed-Circuit television systems. Closed-Circuit seeks $1 million in compensatory damages and $5 million in punitive damages because defendant "wilfully, knowingly, maliciously, and fraudulently [sold] plaintiff faulty and defective electronics television equipment, which did not function as promised."[1]

In response, Jerrold moved for dismissal of the second amended complaint[2] re-iterating its contention that this action, although labelled an action for fraud sounding in tort, is in essence an action for the breach of a contract for the sale of goods which is barred by the four year statute of limitations of the Uniform Commercial Code. (12A P.S. § 2–725). In the alternative, defendant contends that since plaintiff has released all rights it may have had with regard to the equipment sold to it and installed in California, that portion of the claim should be dismissed.

### I

The parties began their association in December of 1965 when Closed-Circuit was awarded a franchise as the "exclusive Authorized Jerrold 2500 Megacycle Engineering Contractor for the Jerrold 2500 Megacycle school relay microwave."[3] Thereafter, Closed-Circuit participated in the retail distribution and installation of electronics equipment in a continent-wide network of franchised electronics firms representing Jerrold in the educational market. Closed-Circuit was defendant's primary distributor in California and Nevada for the installation of Instructional Television Fixed Service (ITFS) Systems.

The ITFS systems offer educational programs, telecast at 2500 Megahertz (MHz) in a microwave band higher in frequency than VHF and UHF, which assures a closed circuit audience.[4] The intended market for distribution of Jerrold ITFS systems included schools, colleges and medical institutions where educational material could be transmitted to classroom laboratories, libraries and meeting halls with the benefit of immediate access to technical information enjoyed by students, physicians, nurses, engineers, and scientists.

1. Second amended complaint, ¶ 7.

2. The original complaint was dismissed because of failure to allege fraud with particularity as required by Fed.R.Civ.P. 9(b).

3. Affidavit of Eugene Singer, President of Closed-Circuit, dated June 26, 1976, Dkt. No. 21, ¶ 3(3) and Exhibit A.

4. In 1963, thirty-one channels in the ITFS band (2500 to 2690 MHz) were allocated for this purpose by the Federal Communications Commission. Plaintiff's response to Defendant's Request # 1 for Production of Documents, Jerrold News Release, December 9, 1968, Philadelphia.

The ITFS system manufactured by Jerrold included 2500 MHz transmitting and receiving antennas, complete microwave or master antenna television (MATV) systems, business radio service microwave used in studio-to-transmitter link applications and community antenna television systems.

One such Jerrold ITFS system was installed in the Pasadena Unified School District, Pasadena, California by Closed-Circuit. It was the first four transmitter system in the world and, according to Closed-Circuit's account, it was in "daily operation and [was] regarded as one of the most complex installations of its kind in the country." [5]

In 1969, Closed-Circuit succeeded in securing the contracts for the installation of the 2500 MHz ITFS system in the Clark County, Nevada school system (75 schools) and the Archdiocese of San Francisco school system. The San Francisco contract required the installation of sixteen transmitters, making it the largest educational television system of the time. Apparently, as a result of their combined success at Pasadena, Closed-Circuit elected to fulfill these subsequent contracts using Jerrold equipment. On or about April 10, 1969, plaintiff purchased the necessary closed circuit equipment from Jerrold upon Jerrold's assurances that the equipment was designed and would meet the contract specifications and Federal Communications Commission ("FCC") standards.[6] Installation of the equipment began on the San Francisco project in November, 1969, three months after work began on the Clark County, Las Vegas school system project. Unfortunately, neither system met with the success achieved at Pasadena. Numerous equipment failures delayed final acceptance at both sites. The presence of spurious radiation emissions from the transmitters in violation of FCC standards and a lack of power supply reliability due to continuous breakdowns in the field not only promoted dissatisfaction on the part of the school officials with the ITFS systems and with Closed-Circuit, but also eroded the relationship between Closed-Circuit and Jerrold no less as a result of the equipment failures than as a result of the lack of cooperation between the parties in attempting to deal with and to correct the malfunctions.[7]

Closed-Circuit asserts that Jerrold's poor performance ultimately reflected upon Closed-Circuit's competence and, as a result, it lost business and its high reputation for service and excellence in the closed circuit television field was damaged.[8]

Eventually, the San Francisco project was completed in November of 1970, and the Clark County, Nevada project in the fall of 1971. With respect to the final acceptance of the San Francisco project, on June 13, 1972 the Roman Catholic Welfare Corporation, representing the Archdiocese of San Francisco, Closed-Circuit and Jerrold executed mutual releases of all claims. Specifically, Closed-Circuit released Jerrold "with respect to any and all claims arising out of JERROLD'S providing of labor or materials with respect to the contract, or any claim for damages which it might have against JERROLD in connection with the contract." [9]

Nevertheless, on October 30, 1974, Closed-Circuit instituted an action against General Instrument Corporation, a parent corporation of Jerrold, in the United States District Court for the Northern District of Illinois. Closed-Circuit sought to recover from General Instrument compensation for its losses in business and reputation attributable to the failure of the Jerrold equipment in Las Vegas and San Francisco. In that action, the District Court granted General Instrument's motion for summary judgment on the grounds that the claims against General Instrument were for breach of contract, and thus were barred by the statute of

---

**5.** Plaintiff's Response to Defendant's Request # 5 for Production of Documents.

**6.** Second amended complaint, ¶¶ 5–6.

**7.** Second amended complaint, ¶¶ 7–8.

**8.** Second amended complaint, ¶ 12.

**9.** *See* Defendant's Motion to Dismiss Plaintiff's *Amended Complaint, Exhibit D.*

limitations governing contract actions and, that General Instrument could not be held responsible for any acts of Jerrold Electronics. *Closed-Circuit Corporation of America v. General Instrument Corporation,* C.A. No. 74 C 3472 (N.D.Ill., filed October 15, 1975).

## II

■ Although mere non-performance of a contract does not constitute a fraud, *Hubert v. May,* 292 F.2d 239, 243 (7th Cir. 1961), it is possible that a breach of contract also gives rise to an actionable tort. *See Brown v. Moore,* 247 F.2d 711, 716 n.6 (3d Cir.) *cert. denied,* 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957); *see also General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204 (8th Cir. 1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). "To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." 1 C.J.S. *Actions* § 46. Therefore, to the extent that Closed-Circuit's losses stemmed from the manufacture and design of the equipment by Jerrold, the claim is barred by the statute of limitations because Closed-Circuit became aware of the deficiencies as early as March of 1970. Closed-Circuit's characterization of Jerrold's conduct as "calculated and deliberate" cannot alter this result. A claim *ex contractu* cannot be converted to one in tort simply by alleging that the conduct in question was wantonly done. *Gibson v. Greyhound Bus Lines, Inc.,* 409 F.Supp. 321 (M.D.Fla.1976); *see also Nirdlinger v. American District Telegraph Co.,* 245 Pa. 453, 462, 91 A. 883 (1914); and, *Damian v. Hernon,* 102 Pa.Super. 539, 542, 157 A. 520 (1931).

■ But where the nature of the duty violated arises not from the contract but from the principle of fair dealing, an action based thereon sounds in tort. *See Mac Andrews & Forbes Co. v. American Barmag Corp.,* 339 F.Supp. 1401 (D.S.C.1972); *Mayo v. Mc Closkey & Co.,* 168 F.Supp. 241 (E.D. Pa.1958).

Closed-Circuit argues that defendant's conduct amounted to a "fraudulent scheme" and contends that defendant's representations as to the design, engineering and manufacture of its equipment were false, thus giving rise to an action for fraudulent representation. Jerrold, on the other hand, contends that Closed-Circuit placed a "fraud" label on what is essentially a cause of action for breach of contract in order to avoid the statute of limitations.

■ My analysis of the pleadings, affidavits and exhibits submitted by the parties convinces me that the allegations and the proof can rise no higher than that the defendant failed to comply with the contract specifications. Closed-Circuit cannot remove the transactions from the ambit of the Commercial Code to the area of tortious conduct simply by making general allegations of fraud. *See Investors Premium Corp. v. Burroughs Corp.,* 389 F.Supp. 39, 45–46 (D.S.C.1974); *James Spear Stove & Heating Co. v. General Electric Co.,* 12 F.Supp. 977 (E.D.Pa.1934), *aff'd,* 80 F.2d 1012 (3d Cir. 1935).

In essence, plaintiff's second amended complaint alleges: a) ". . . plaintiff . . . on or about the 10th day of April, 1969 . . . purchased from the defendant certain closed-circuit electronic equipment for installation in systems" in California and Nevada (¶ 5); ". . . plaintiff relied upon the defendant's claims that the equipment was designed and would work for the purposes intended" (¶ 6); that said equipment "did not function as promised" and was "defective" (¶ 7); b) ". . . as a result of said defective and faulty equipment, plaintiff would cause to lose business accounts and its high reputation for service . . . ." (¶ 12); c) ". . . the faulty aforementioned electronic equipment broke down in the field, and did not function according to specifications" (¶ 13).

These allegations present a typical claim for breach of the Uniform Commercial Code warranties of merchantability and fitness for a particular purpose. Nevertheless, the plaintiff has attempted to transform the claim into an action for fraud by inserting the word "fraudulently" in paragraphs 7

and 13, and the phrase "fraudulent acts" in paragraph 11, and thereby avoid the bar of the statute of limitations which contributed to the demise of the plaintiff's suit in the Northern District of Illinois. Such broad general allegations are insufficient as a matter of law. As the Court stated in *Hertz Commercial Leasing Corp. v. LMC Data, Inc.,* 73 Misc.2d 1009, 343 N.Y.S.2d 689 (1973):

> "If a party could simply, by alleging that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes."

The only specific allegation of fraud is that Jerrold wilfully misrepresented that certain equipment had "FCC type acceptance" prior to the sale when, in fact, such acceptance was not extended by the FCC until February of 1970.[10]

■ The tort of fraudulent misrepresentation comprises several elements including the making of a representation which is false by one who knows the falsity of the statement or fact and, thereby intends to deceive another so as to induce action on the other's part which will be to his detriment. *United Insurance Company of America v. B. W. Rudy, Inc.,* 42 F.R.D. 398, 403 (E.D.Pa.1967). Here, the alleged misrepresentation appears in a Jerrold advertising manual or "printed catalogue sheet" which states: "the SRT–1 Transmitter has been type accepted by the Federal Communications Commission (FCC) for transmission of both monochrome and color. Each unit meets or exceeds FCC specifications."[11] The most that can be said of this representation, however, is that it was premature since plaintiff concedes that the equipment was eventually given FCC type acceptance.[12]

Had plaintiff been prepared to prove that the equipment could not obtain FCC type acceptance, then the fraud claim would have some substance. *Compare Barrett Roofing & Supply Co. v. Ross,* 131 F.Supp. 348 (D.Mass.1955) with *James Spear Stove & Heating Co. v. General Electric Co., supra.* Under the circumstances presented here, I am satisfied that the representation concerning type acceptance by FCC is not material and will not sustain an action for fraud.

Therefore, plaintiff's action is reduced to a claim for the sale of defective merchandise. The sale took place in April, 1969 and plaintiff became aware of the defects in March, 1970.[13] The original complaint was filed on December 4, 1975. It is obvious, therefore, that this action is time barred by the four year limitation of the Uniform Commercial Code (12A P.S. § 2–725).

■ The statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c). However, the defense may be raised by a motion to dismiss under Rule 12(b)(6), *Jones v. Rogers Memorial Hosp.,* 143 U.S.App.D.C. 51, 442 F.2d 773 (1971), and since matters outside the pleadings were presented to the court, I have treated this motion as a motion for summary judgment under Rule 56.

Accordingly, summary judgment will be entered in favor of the defendant and against the plaintiff.

---

**10.** Second Amended Complaint, ¶¶ 6, 10.

**11.** Affidavit of Eugene Singer, dated June 26, 1976, Exhibit B, p. 3.

**12.** *Second Amended Complaint,* ¶ 10.

**13.** Second Amended Complaint, ¶ 8.