M. Diane KOKEN, Insurance Commissioner of the Commonwealth of Pennsylvania, in her official capacity as Liquidator of Reliance Insurance Company, Plaintiff,

v.

Saul P. STEINBERG, et al., Defendants.

M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, Plaintiff,

v.

Deloitte & Touche, LLP, et al., Defendants.

In Re: Preliminary Objections of Deloitte & Touche, L.L.P. and Jan A. Lomelle.

Commonwealth Court of Pennsylvania.

Decided May 20, 2003.

Jerome R. Richter, Philadelphia, for plaintiff.

Jeffrey S. Saltz, Philadelphia, for defendant.

## OPINION AND ORDER

COLINS, President Judge.

Deloitte & Touche, L.L.P. and Jan A. Lomelle[1] (Deloitte) have filed preliminary objections in the nature of a demurrer to the complaint filed against them by the Liquidator. For the reasons set forth below the Court overrules those objections.

Deloitte provided auditing and actuarial services to Reliance Insurance Company (Reliance) for a number of years up to and including 1999. Deloitte provided statements of actuarial opinion regarding the loss reserves carried by Reliance, conducted audits of Reliance's financial statements, and issued reports on those audits. Deloitte's services were performed pursuant to engagement letters countersigned by Reliance.

On January 17, 2002, Diane Koken, the Insurance Commissioner of the Commonwealth of Pennsylvania, acting in her capacity as the Liquidator of Reliance Insurance Company (Liquidator), served Deloitte with a subpoena to produce documents in relation to the liquidation proceeding. Deloitte claims to have produced more than 250,000 pages of documents from March 2002 through the summer of 2002. In June 2002, the Liquidator brought an action against certain former officers and directors of Reliance, alleging a series of statutory and tort claims based on allegations of a series of improper inter-company transactions that resulted in what the Liquidator terms the "looting" of Reliance.

In October 2002, the Liquidator filed this action against Deloitte, alleging that Deloitte had committed various torts and breaches of contract in connection with its audit and actuarial duties during the same time period covered by the complaint against Reliance. In her complaint against Deloitte, the Liquidator alleges that Deloitte "propped up Reliance's reported financial position, deflected regulatory scrutiny, and permitted Reliance to pay out cash to its unregulated parent companies and undertake additional policy-

---

1. Lomelle was a principal at Deloitte and acted in that capacity as the appointed auditor for Reliance at all times relevant to the Complaint.

holder obligations when Deloitte ... knew or should have known that Reliance was seriously financially troubled and was or would shortly be insolvent." (Complaint, ¶ 3). The result, according the Liquidator, was a one billion dollar overstatement of Reliance's financial condition that was a direct and proximate cause of harm to Reliance, its policyholders, and creditors.

The complaint against Deloitte contains seven counts. Count I alleges negligence and malpractice in the performance of actuarial services; Count II alleges negligence and malpractice in the performance of auditing services; Count III alleges breach of contract in the performance of actuarial services; Count IV alleges breach of contract in the performance of auditing services; Count V alleges misrepresentation; Count VI alleges negligent misrepresentation; and Count VII alleges aiding and abetting. Deloitte asks us to dismiss Counts I through IV and VI as they assert claims on behalf of persons other than Reliance and Count III, IV, V and VII in their entirety.

■ Preliminary objections may be sustained only if the law says with certainty that no recovery is possible. *Foster v. Peat Marwick, Main & Co.*, 138 Pa. Cmwlth. 147, 587 A.2d 382 (1991), *affirmed sub nom. Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 544 Pa. 387, 676 A.2d 652 (1996). To sustain preliminary objections a complaint must be clearly insufficient to establish any right to relief, and preliminary objections will not be sustained if any theory of law will support a claim. *Id.* Any doubt should be resolved against the objecting party. *Id.*

Deloitte bases its argument for the dismissal of those parts of the claims for professional negligence, breach of contract, and negligent misrepresentation contained in Counts I through IV and VI that state claims for relief on behalf of others than Reliance on the grounds that privity must exist between parties before Pennsylvania law will allow recovery against an accountant for professional negligence and that the Liquidator cannot recover on behalf of policyholders and creditors because they were not in privity with Deloitte.[2] Deloitte also claims that Counts III and IV must fail because they state claims for breach of contract on behalf of policyholders and creditors without a showing that they are intended third-party beneficiaries.

■ We will not discuss Deloitte's arguments on this issue because in making those arguments Deloitte simply ignores the fact that it is now settled law in Pennsylvania that an insurance regulator is charged not only with representing the public interest but the interests of policyholders and creditors as well. Article V of the Insurance Department Act, 40 P.S. §§ 221.1–221.63 (Article V), clearly states, "The purpose of this article is the protection of the interests of insureds, creditors, and the public generally." 40 P.S. § 221.1(c). It also states, "This article shall be liberally construed to effect the purpose stated in subsection (c)." 40 P.S. § 221.1(b). Deloitte not only ignores the controlling statute in making its argument, it ignores this Court's very recent decision in *Koken v. Fidelity Mutual Life Insurance Co.*, 803 A.2d 807 (Pa.Cmwlth.2002), and the Court's antecedent decision in *Foster*, above.[3]

In *Koken*, the Court, relying on its decision in *Foster*, discussed the purpose of Article V,

---

**2.** The demurrer does not question the Liquidator's authority to bring these claims against Deloitte.

**3.** Deloitte does mention *Koken, Foster* and Article V, but it relegates them to a footnote in which it merely denies that they are controlling or that they were "wrongly decided in

In this jurisdiction, our Court has said that Article V authorizes the rehabilitator to pursue actions on behalf of the insurer and on behalf of the policyholders and other creditors. *Foster v. Peat Marwick Main & Company,* 138 Pa. Cmwlth. 147, 587 A.2d 382 (1991) *(Foster).* In that case, we overruled the defendants' preliminary objections that were grounded on the purported failure of the plaintiff, the Insurance Commissioner as rehabilitator of The Mutual Fire, Marine and Inland Insurance Company, to state a cause of action for injuries to policyholders. The defendant there contended that Article V authorized her to bring actions "on behalf of the insurer" only. We noted that there, as here, the company was a mutual company and that therefore the policyholders were both the insureds and the insurers. We also cited Article V's stated purposes, among which is the protection of insureds and other persons, as well as the estate, and found that "a rehabilitator ... may assert injury common to shareholders and general creditors and enjoys the authority to recover estate assets to which they will eventually look for recovery." 587 A.2d at 385. Such a holding comports with the stated purpose of Article V to protect the interest of insureds "through ... equitable apportionment of any unavoidable loss" Section 501(c)(iv), 40 P.S. § 221.1(c)(iv). 803 A.2d at 820 (emphasis omitted).

█ Counts I through IV and VI properly state a claim against Deloitte on behalf of the policyholders and creditors of Reliance.[4]

Deloitte next argues that Counts III and IV, which respectively allege breaches of contract to provide actuarial and auditing services, must be dismissed because they are mere restatements of the negligence claims and that they fail to state any claim in contract. The Court disagrees.

Deloitte first relies on a memorandum opinion of the U.S. District Court for the Eastern District of Pennsylvania, *In re Official Committee Of Unsecured Creditors Of Corell Steel On Behalf Of Corell Steel v. Fishbein And Company, P.C., et al.,* Civ. A. No. 91–4919 (E. Dist of Pa.1992) (1992 WL 196768). *Corell* addresses, among other issues, whether an accountant may be sued in contract for failing to provide services the accountant agreed to provide. The court began its discussion by saying, "Failure to perform a service with the requisite level of professional care typically constitutes a claim of negligence, not breach of contract." The court does not make a determination on the issue because it concludes, "First, it is not clear under basic contract law that Corell's agreement with Fishbein, even as characterized by plaintiff, creates a cause of action in contract. Second, even if the agreement does create a cause of action in contract, plaintiff has failed to properly state a claim of breach of contract in accordance with Pennsylvania law." 1992 WL 196768, p. 5. This quotation upon which Deloitte relies in *Corell* is not instructive.

light of binding Supreme Court authority," which Deloitte fails to identify.

4. Deloitte based its privity argument on cases that predate our decisions in *Foster* and *Koken* or that are simply not relevant to Article V: *Landell v. Lybrand,* 264 Pa. 406, 107 A. 783 (1919); *Guy v. Liederbach,* 501 Pa. 47, 51, 459 A.2d 744, 746–47 (1983); *Ultramares*

*Corp. v. Touche,* 174 N.E. 441, 255 N.Y. 170, 179 (1931); *In re Phar–Mor, Inc. Securities Litigation,* 892 F.Supp. 676, 690 (W.D.Pa. 1995); *Pell v. Weinstein,* 759 F.Supp. 1107 (M.D.Pa.1991); *Izadi v. Tonkinson and Associates, Inc.,* 2000 WL 33711081 (Phila. County C.C.P.); *Two Rivers Terminal, L.P. v. Chevron USA, Inc.,* 96 F.Supp.2d 432 (M.D.Pa.2000).

The *Correll* court, however, quoting *Sherman Industries, Inc. v. Goldhammer,* 683 F.Supp. 502, 506 (E.D.Pa.1988), explained how contract and tort differ.

> "[I]n order to distinguish a contract malpractice claim from a tort claim, the plaintiff claiming under a contract theory must raise an issue as to whether it specifically instructed the defendant to perform a task that the defendant failed to perform, or as to whether the defendant made a specific promise upon which plaintiff reasonably relied to its detriment."

1992 WL 196768, p. 6 (E.D.Pa.). The Court will explain below that Deloitte made specific promises to Reliance in regard to its loss reserves that Reliance relied upon to its detriment.

Deloitte next relies on another memorandum and order from the District Court. In *Foster v. Alexander & Alexander Services, Inc.* 1995 WL 27447 (E.D.Pa.), the court, using the quote from *Correll*, above, tells us, "Failure to perform a service with the requisite level of professional care typically constitutes a claim of negligence, not breach of contract." *Id.* at 6, and "An agreement to act with the legally required level of care cannot constitute a specific contractual promise." *Id.*, "[A] Plaintiff may not proceed in contract on the theory that an obligation to exercise reasonable care was an express or implied term of the contract." *S & G Petroleum Co. v. Brice Capital Corp.,* 1993 WL 20215, p. 1 (E.D.Pa.). Deloitte then relies on this quotation in its brief, "The theory behind these cases is that the contract, if one exists, is not the source of the duty to act with professional care. Instead, that duty arises by law." *Foster,* at 3. The Court again finds that that Deloitte reference is not persuasive because the District Court goes on to conclude,

> In the case at bar, plaintiff has not alleged professional malpractice. Rather, plaintiff has termed her claim as one for breach of contract. In the complaint, plaintiff enumerated each of the areas of defendants' failure to perform or negligent performance. For example, plaintiff alleged that defendants breached a contractual duty to (a) produce and underwrite business on behalf of Mutual Fire, including, but not limited to, the determination of the acceptability of the risk, the amount of risk to be retained by Mutual Fire and the rates and premiums to be charged; (b) to handle claims on behalf of Mutual Fire including, but not limited to, the identification, settlement, defense and reserving of claims; (c) to maintain and furnish financial reports to Mutual Fire including, but not limited to, timely and accurate information concerning the adequacy of the rates and premiums charged, the adequacy of any and all reserves set and the profitability of any business produced by Shand on behalf of Mutual Fire; (d) to place reinsurance with reputable and financially secure reinsurers including, but not limited to, investigating the solvency of such reinsurers, and obtaining appropriate letters of credit, trust funds or other collateral, to protect Mutual Fire and limit its exposure on any policy issued; and (e) to operate in the best interests of Mutual Fire.

> Each of those specifics pertained to specific requirements in the contract. Thus, plaintiff's complaint differs from that in *Official Committee* [*Correll,* above], where the contract merely required the accountant to act in accordance with his legal duty of care. Thus, the Court finds that plaintiff's complaint sufficiently alleges a claim for breach of contract.

1995 WL 27447, 4–5.

Finally, Deloitte relies on the recent decision in *Etoll, Inc. v. Elias/Savion Adver-*

*tising Inc.,* 811 A.2d 10 (Pa.Super.2002), when it tells us that the "gist of the action" doctrine "[a]s a practical matter, . . . precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id.* at 14. Deloitte, however, has placed the horse of contract horse before the cart of tort. Here is what our sister court said about the "gist of the action."

First, Appellant argues that the trial court erred by applying the "gist of the action" doctrine to dismiss Appellant's fraud claim. While the doctrine has not yet been expressly adopted by our Supreme Court, it was recognized by this Court for the first time in *Bash v. Bell Tel. Co.,* 411 Pa.Super. 347, 601 A.2d 825 (1992).

Generally, the doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. *Id.* at 829. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. *Id.* The *Bash* Court explained the difference between contract claims and tort claims as follows:

[a]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions. *Id.* at 829, citing, *Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.,* 457 F.Supp. 1158, 1165 (E.D.Pa.1978). "[a]lthough mere non-performance of a contract does not constitute a fraud[,] it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Bash,* 601 A.2d at 829, citing, *Closed Circuit Corp. v. Jerrold Electronics Corp.,* 426 F.Supp. 361, 364 (E.D.Pa.1977). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus."

811 A.2d at 14.

■ The "gist" of the action brought by the Liquidator is a tort action alleging malpractice. The Liquidator is not alleging that Deloitte's breach of its contract constituted a fraud. The gist of the action is in tort, the breach of the contract between Deloitte and Reliance is collateral to that tort action. "To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Etoll/Savion,* 811 A.2d at 14.

■ A claim for breach of contract exists where it can be shown that there was a contract, a breach of a duty imposed by that contract and damages that resulted from the breach. *General State Authority v. Coleman Cable & Wire Co.,* 27 Pa.Cmwlth. 385, 365 A.2d 1347 (1976). "[T]he basic elements of a contract consist[ ] of an offer, acceptance and consideration." *Hatbob v. Brown,* 394 Pa.Super. 234, 575 A.2d 607, 613 (1990).

■ Three exhibits are attached to the complaint, each exhibit is an engagement letter authored by Deloitte and counter-

signed by Reliance. In these engagement letters Deloitte states that it will perform its duties in accordance "with generally accepted auditing standards" (Complaint, ¶ 60); that it will perform its audits "to obtain reasonable assurance" that Reliance's financial statements were "free of material misstatement, whether caused by error or fraud" (Complaint, ¶ 61); and that Deloitte will seek to identify weaknesses in internal controls and disclose any weaknesses that it did identify (Complaint, ¶ 62). Deloitte also agrees to express an opinion as to the adequacy of Reliance's loss reserves (Complaint ¶¶ 39 and 44) and to "use reasonable assumptions and appropriate actuarial methods, and to abide by applicable standards of practice and principle that govern the actuarial profession." (Complaint, ¶ 42). Specific consideration for those services is recited in the letters. The complaint alleges in detail how Deloitte undertook to perform those services and, in the process, breached its duty of performance. (Complaint, ¶¶ 46–47, 52, 64–70, 73–74, 83–89, 92–95, 133, and 140.) The Liquidator has alleged the existence of a contract and specific breaches of the terms of that contract.

■ Deloitte argues that, even if contracts existed, accountants may not be sued in contract for failing to properly provide professional services and that an action against them may only be brought in malpractice. The Court disagrees. Nothing in our law insulates accountants or other professionals from being sued in contract for a failure to properly perform professional services. Neither party can demonstrate anything in our law that says that an accountant may or may not be sued in contract based on allegations of malpractice, and the Court's research discloses nothing. We are persuaded, however, by the Liquidator's argument that accountants are subject to the same standard that our Supreme Court applied to attorneys in *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108 (1993). In *Bailey* our Supreme Court said,

We now turn our attention to the second type of malpractice issue: an assumpsit claim based on breach of the attorney-client agreement. This claim is a contract claim and the attorney's liability in this regard will be based on terms of that contract. Thus, if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue. Of course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

533 Pa. at 252, 621 A.2d at 114.

Deloitte was employed to provide professional services; it promised to provide those services according to "generally accepted accounting practices" which we take to be "consistent with those expected of the profession at large." and the Liquidator has specifically alleged that Deloitte's failure to perform it's duties as promised was the proximate cause of the damage to Reliance. The Court sees no reason to hold accountants to a different standard than our Supreme Court has applied to attorneys. Counts III and IV state claims against Deloitte for breach of contract.

Deloitte next asks us to dismiss Count V because it is not specific enough to state a claim for fraudulent misrepresentation. Our Supreme Court tells us that the elements of fraudulent misrepresentation are well settled and that they consist of: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrep-

resentation; and 6) resulting injury proximately caused by the reliance. *Porreco v. Porreco,* 571 Pa. 61, 65, 811 A.2d 566, 570 (2002) (citations omitted).

In its Demurrer to Count V Deloitte says, "[T]here is nothing in Count V that differentiates it from any of the other counts alleged.... [T]he Complaint fails to plead any factual support for the Commissioner's conclusory allegations that Deloitte's actions were reckless or intentional." Deloitte's statement conveniently and cynically ignores fifty previous paragraphs of the Complaint (¶¶ 46–96) that exhaustively detail the elements necessary to constitute fraudulent misrepresentation as it is defined above. Count V of the Complaint, when read with the Complaint as a whole, pleads fraud with the particularity required by our law.

Finally, Deloitte argues that Count VII, which claims that Deloitte aided and abetted breaches of fiduciary duty by executives of Reliance, must be dismissed because no Pennsylvania court has recognized the tort and, in addition, because the Complaint fails to set forth the elements of the tort.

Section 876 of the Restatement (Second) of Torts, Persons Acting In Concert, provides that one is subject to liability for harm to a third person arising from the tortious conduct of another if he a) does a tortious act in concert with the other or pursuant to a common design with him; b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself; or c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Our Supreme Court addressed Section 876 in *Skipworth by Williams v. Lead Industries Association, Inc.,* 547 Pa. 224, 690 A.2d 169 (1997), and this Court is convinced by this language in *Skipworth* that Section 876 is a viable cause of action in Pennsylvania.

The final question for this court to review is whether the trial court properly entered summary judgment in favor of Appellees on Appellants' concert of action claim. This theory provides in pertinent part that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him...." Restatement (Second) of Torts, § 876.

The concert of action theory has not yet been discussed by this court, but has been addressed by our Superior Court. See *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973, (1985); *Kline v. Ball,* 306 Pa.Super. 284, 452 A.2d 727 (1982). In *Burnside* and *Kline,* the Superior Court held that a claim of concerted action cannot be established if the plaintiff is unable to identify the wrongdoer or the person who acted in concert with the wrongdoer. *Burnside,* 351 Pa.Super. at 284, 505 A.2d at 984; *Kline,* 306 Pa.Super. at 287, 452 A.2d at 729. We find that these interpretations of the concert of action theory are eminently reasonable and hereby expressly adopt them.

We find that Appellants failed to establish that they had a cause of action for concert of action as they are unable to identify the manufacturer of any of the lead pigment found at Skipworth's residence that was ingested by her and allegedly caused her injuries. As they are unable to identify any one of the lead pigment manufacturers as the wrongdoer, we therefore hold that the

trial court correctly entered summary judgment on the concert of action claim.

547 Pa. at 236, 690 A.2d at 174.

■■■ As we will detail below, the Liquidator has clearly identified the wrong, a breach of fiduciary duty, the wrongdoer, Reliance, and the party that acted in concert with the wrongdoer, Deloitte. Accordingly, this Court concludes that the Liquidator has stated a cause of action against Deloitte for aiding and abetting a breach of fiduciary duty pursuant to Section 876 of the Restatement (Second) of Torts.

Finally, Deloitte's argues that even if the tort of aiding and abetting should exist in Pennsylvania, the Complaint fails to allege the necessary elements of the tort. In *Cummins v. Firestone Tire & Rubber Co.*, 344 Pa.Super. 9, 495 A.2d 963 (1985), our sister court said this about Section 876,

> In order for this cause of action to be viable, there must be acts of a tortious character pursuant to a common design or plan. RESTATEMENT (SECOND) OF TORTS § 876 comment (b) (1977). In the alternative, a defendant must render substantial assistance to another to accomplish a tortious act. As specifically stated in comment (d) to § 876(b), "in determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence...."

495 A.2d at 969.

Deloitte, in its brief at p. 16, relying on *Thompson v. Glenmede Trust Co.*, 1993 WL 197031 (E.D.Pa.1993) tells us that federal courts have recognized a cause of action for aiding and abetting and have detailed the elements of the action for breach of fiduciary duty, but it urges us to find that the allegations of the Liquidator's Complaint are merely conclusory. In *Thompson* the District Court said,

> In *Pierce v. Rossetta Corp.*, Civil Action No. 88–5873, 1992 WL 165817 (E.D.Pa. June 12, 1992), anticipating the acceptance of the claim by Pennsylvania courts the district court held: the elements for a claim for aiding and abetting breach of a fiduciary duty under Pennsylvania law would be: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach. *Id.* at 8 (citing, Restatement (Second) Torts § 876 (1979)).

1993 WL 197031 at 7.

In her Complaint at paragraph 162 the Liquidator alleges, "The officers and directors of Reliance owed Reliance, its policyholders and other creditors fiduciary duties, including the duties of care, loyalty, candor, and disclosure." In paragraphs 163 to 172 the Liquidator details how the officers and directors of Reliance breached those fiduciary duties. The Liquidator pleads Deloitte's knowledge of the officers' and directors' duties and its knowledge of their breach of those duties in paragraph 173, that Deloitte rendered substantial assistance or encouragement in effecting the breach is plead in paragraph 174, and, in paragraph 175, that that assistance and encouragement were the cause of damage to Reliance. Deloitte dismisses these as "conclusory allegations." The Court disagrees, and, recognizing that *Thompson* is merely persuasive, we find that the language of the Complaint is sufficient to establish that Deloitte "render[ed] substantial assistance to another to accomplish a tortious act." *Cummins*, 495 A.2d at 969; *see Skipworth*, 547 Pa. at 236, 690 A.2d at 174.

Accordingly, the Court will dismiss the preliminary objections filed by Deloitte & Touche, L.L.P. and Jan A. Lomelle in their entirety.

## ORDER

AND NOW, this 20th day of May, 2003, upon consideration of the preliminary objections filed by Deloitte & Touche, L.L.P. and Jan A. Lomelle and the Liquidator's response thereto, those objections are OVERRULED, and it is further ordered that Defendants Deloitte & Touche, L.L.P. and Jan A. Lomelle, through their counsel, are hereby directed to serve a copy of this order, forthwith, upon the Plaintiff, M. Diane Koken, as Liquidator for Reliance Insurance Company, and those individuals listed on the certificate of service attached to the above-captioned preliminary objections, via U.S. mail and, where designated, fax and/or e-mail. Further, the Defendants, through their counsel, are directed to file with the court in the Office of the Prothonotary, 9th Floor the Widener Building, 1339 Chestnut Street, Philadelphia, PA 19107, by 3:00 p.m. on the 27th day of May, 2003 an affidavit that service has been effected as outlined above. It is further ordered that Deloitte & Touche, L.L.P. and Jan A. Lomelle shall file an answer to the Complaint in accordance with the applicable rule of civil procedure.