## Conway v. The Cutler Group, Inc.

C.P. of Bucks County, No. 2011-05465-31.

*Christopher A. Bradley,* for appellants.
*Nancy J. Wright,* for appellee.

WAITE, *J.,* April 18, 2012—This matter came before this court on Michael and Deborah Conway's ("appellants") claim of breach of the implied warranty of habitability against the builder of a single family residential unit, The Cutler Group ("appellee"). Appellee filed preliminary objections in the nature of a demurrer which were sustained in our February 15, 2012 order, dismissing appellants' case with prejudice. Appellants filed their motion for reconsideration which was denied. Appellants filed their appeal in the time noted on the dockets. This opinion is filed pursuant to Pa.R.A.P. 1925(a).

## FACTS

In 2006, appellants purchased the residential dwelling ("the subject property") from Davey and Holly Fields ("Fields"). The Fields purchased the subject property from appellee in 2003. Appellee was the designer, developer and builder of the subject property and was the party who originally sold the subject property to the Fields. In 2008, appellants discovered water infiltration around certain windows and other openings in the subject property. Appellants brought suit in 2011 without including the intermediate seller as a defendant but instead claimed that appellee was the sole responsible party as builder. The sole basis for appellee's liability rests on the theory of implied warranty of habitability.

Appellant retained an expert who opined that the subject property had defective sealing, caulking and flashing, which in turn caused water infiltration and resultant damage. In a one count complaint, appellants alleged a breach of the implied warranty of habitability in contract. Liability of a builder/vendor of a new dwelling for loss or injuries to direct purchasers is firmly established and accepted law; less common but nonetheless at times recognized and accepted, is the extension of liability to a remote purchaser based on provable negligence. Here, however, appellant is a remote purchaser who seeks to extend liability based solely on a contractual breach of implied warranty of habitability without any assertion of negligence. Claims based on the theory of liability asserted by the instant appellee have not found the same level of acceptance in the Commonwealth of Pennsylvania as for claims based in tort. Subsequent purchasers obviously

do not have a direct contractual relationship with the builder/vendor and the courts have resisted extension of an express warranty given by the builder/vendor to the original purchaser to now cover subsequent purchasers.

## DISCUSSION

On August 4, 2011, the appellee/Cutler Group filed preliminary objections primarily asserting a lack of privity of contract with appellant as the secondary purchaser of the subject property. We were unsuccessful in finding Pennsylvania appellate court precedent to support the theory of appellees' claim. The issue has received mixed and divided results where it has been considered in our Pennsylvania Common Pleas Court opinions. See *Moyer v. White*, 48 Pa. D. & C.3d 487 (C.P. Dauphin 1988) and cases cited therein. The case law in other jurisdictions is also divided. See *Richards v. Powercraft Homes, Inc.*, 678 P.2d 427 (Ariz. 1984) and Michael A. DiSabatino, J.D., Annotation, *Liability of Builder of Residence for Latent Defects Therein as Running to Subsequent Purchasers from Original Vendee*, 10 A.L.R. 4th 385 (1981).

Appellant contends that *Spivack v. Berks Ridge Corp.*, 586 A.2d 402 (Pa. Super. 1991) supports their theory of liability. We disagree. *Spivack* raises a similar but distinguishable issue where plaintiff purchased a new residential condominium from a developer who in turn obtained title from the builder, a separate and distinct entity. While plaintiff in that case was not the first transferee of the condominium, plaintiff was the first retail user and occupier of the condominium. The fact that the plaintiff

was the first user and occupier of the unit was critical to the court's decision to extend warranty protections to that plaintiff. The Superior Court found that "[p]rivity of contract is not required to assert a breach of warranty claim against the builder of a new residential unit." *Id.* at 405. The above noted critical distinction in *Spivack* does not obtain in the instant matter. The *Spivack* court opined as follows:

> In *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1971), our Supreme Court ruled that a builder/vendor impliedly warrants that the house he has built and is selling is constructed in a reasonable workmanlike manner and that it is fit for habitation. Such warranties arise by operation of law, independent of any contractual representations. Although this court has not heretofore ruled on whether implied warranties extend from a builder of a residential unit to the initial purchaser-user when the builder is not also the seller, logic requires such a finding. This court having previously found an implied warranty exists from the builder/vendor of a new house to his vendee (herein the developer), sees no logical reason to limit the builder's warranty to his immediate vendee. *Where the builder knows or should know that that particular purchaser will not be the first user, as in the instant matter, any implied warranties must necessarily extend to the first user-purchaser, herein the appellants.* Warranties of habitability and reasonable workmanship are not created by representations of the builder/vendor but rather are implied in law and as such, exist independent of any

representations of a builder/vendor. *Spivack*, 586 A.2d at 405 (citing *Ecksel v. Orleans Construction Co.,* 519 A.2d 1021 (Pa. Super. 1987) and *Tyus v. Resta*, 476 A.2d 427 (Pa. Super. 1984)). [Emphasis added].

We, therefore, did not find *Spivack* persuasive and our research could find no other precedent definitively disposing of the issues raised herein.

It is well settled in Pennsylvania that when determining preliminary objections, the court must accept as true all the material facts in the complaint and those inferences which can be reasonably deduced therefrom. See *Boyd v. Rockwood Area Sch. Dist.,* 907 A.2d 1157, 1163 n.8 (Pa. Commw. 2006). However, the court does not have to accept as true "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expression of opinion." *Martin v. Pa. Dep't of Transp.,* 556 A.2d 969 (Pa. Commw. 1989). Preliminary objections should be sustained only in cases that are "free and clear from doubt." *Bourk v. Kazaras*, 746 A.2d 642, 643 (Pa. Super. 2000). Any doubt should be resolved against the objecting party. *Koken v. Steinberg,* 825 A.2d 723 (Pa. Commw. 2003)

This court should not shirk from the dismissal of a cause of action where, as a matter of law, the proponent cannot prevail due to the absence of an adequate basis in law. *Desanctis v. Pritchard,* 803 A.2d 230 (Pa. Super. Ct. 2002). Although litigation involving the alleged liability of a builder/vendor of a new dwelling for loss or injuries to direct purchasers has occupied the courts for some time, the attempt to extend a builder's contractual liability to

subsequent purchasers with whom he has no contractual relationship appears to be a fairly recent development. The courts that have considered the matter have generally held that where a remote purchaser can prove actual negligence on the part of a builder/vendor which results in foreseeable injury or loss to the remote purchaser, the remote purchaser may recover. On the other hand, courts have resisted extending an express warranty (with the implied feature of habitability) given by the builder to the original purchaser so as to permit subsequent purchasers to bring suit on the basis of contracts to which they were not parties. Interestingly, in the instant matter, appellant presents a pure and refined instance where the only issue raised for the court's consideration is the issue of contract.

Judge Stanton Wettick of the Allegheny County Court of Common Pleas waded deeply into the issue in *Kapentanovich v. Fox*, 20 Pa. D. & C.4th 316 (C.P. Allegheny 1993) where he observed:

> The issue that this opinion addresses is whether the implied warranty arising out of the sale of new residential housing extends to remote purchasers.

> In *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972), the Pennsylvania Supreme Court concluded that the caveat emptor rule as applied to new houses is an anachronism out of harmony with modern home building practices and held that a builder/vendor impliedly warrants that the house that he has built and is selling is constructed in a reasonable workmanlike

manner and that it is fit for the purpose intended--habitation. Since 1972, the Pennsylvania Superior Court has consistently looked to the underlying rationale for the *Elderkin* opinion in deciding the scope of the implied warranty of reasonable workmanship and habitability. See e.g., *Groff v. Pete Kingsley Building, Inc.*, 543 A.2d 128 (1988); *Tyus v. Resta*, 476 A.2d 427 (1984).

Defendants are in the business of constructing and selling houses. They completed the house that is the subject of this litigation in March 1989. Plaintiffs are the second or third owners of this house. They did not purchase the house from defendants. Defendants did not construct the house for plaintiffs.

Plaintiffs allege that defendants breached the implied warranty of reasonable workmanship and habitability by their failure to construct the foundation for the front porch of the house in a proper manner. They seek to recover the money that they will expend to correct these construction defects.

Defendants have filed preliminary objections in the nature of a demurrer that are the subject of this opinion and order of court. The basis for the preliminary objections is that the implied warranty of reasonable workmanship and habitability does not extend to remote purchasers.

Judge Wettick, in his very scholarly opinion explores the depths of the public policy that led to the creation of the principle of implied warranties of habitability in the

construction of residential dwellings that benefits direct purchasers. Judge Wettick saw no reason why the benefits provided to direct purchasers should not accrue to the benefit of subsequent purchasers as the same compelling forces apply to the subsequent purchaser who buys within the six year statute of limitations that apply in contract disputes involving real property as opposed to goods.

As compelling as Judge Wettick's explication of the issue may be, under the state of the law as it exists today, it simply does not follow that the fact that there is a latent defect in a newly constructed residential dwelling, that the builder acted negligently. The public policy to place the burden of risk on the builder by extending the impliedly contracted for warranty of habitability has not yet been established. The builder is not a guarantor or warrantor for all buyers within the line of title based on the original contract of warranty. As a matter of public policy, this issue is of particular importance in light of the common practice of insurers to exclude latent defects in coverage questions for property insurance. *Rorer Group Inc. v. Ins. Co. of N. Am.,* 655 A.2d 123, (Pa. Super. 1995) (where latent defects caused physical damages even where separate endorsements were purchased for similar types of damages). The question then is one of policy as to who will bear the burden for damages caused by latent defects not reasonably discoverable by prudent buyers of relatively new residential dwellings.

Damages caused where an insured's home was damaged when water intruded into the basement during

heavy rains because of the geometry of the roof and gutter system have been excluded for insurance purposes on the basis of latency of the causative agent. Many policies do not define "latent defect" but Webster's Third New International Dictionary defines the adjective, "latent" as follows: "existing in hidden, dormant, or repressed form, but usually capable of being evoked, expressed, or brought to light; existing in posse; not manifest; potential."

The instant appellant attached a report of their expert to their complaint who stated that the water intrusion was caused by visible "kick out flashing" and improper caulking and sealing that resulted in cracks, photographs of which were included in the expert's report. The result of these defects resulted in the intrusion of moisture into the wood sheathing beneath the stuccoed exterior ultimately resulting in degradation of the wood substructure. Whether the defect was latent because it was unapparent upon reasonable inspection, but discoverable only after a post-failure examination by an expert; or, was some inherent defect in materials used that could not be discovered by any known or customary test and does not include faulty design or construction; or, was a defect that was hidden and not readily observable or discoverable to any but the most searching examination, cannot be determined. But, based on the form of appellant's claims that omitted claims in negligence or claims of ambiguity in the contract on the issue of intended recognition of third party beneficiaries, appellant was satisfied that the defects were latent and apparently were not caused by the Cutler Group's negligence. The question, therefore, becomes

one of whether on the basis of public policy, the courts may impose an implied contractual duty on the builder, independent of any direct contract; and independent of any negligent conduct on the part of the builder to construct a home without latent defects for the benefit of subsequent purchasers. Other jurisdictions have concluded that based upon public policy considerations necessary to protect inexperienced home buyers from overreaching by more knowledgeable builders, that they would extend the protections to buyers particularly given that the purchase of a residence in most cases being the most significant investment in the purchaser's lifetime. *Colorado Homes, Ltd. v. Loerch-Wilson*, 43 P.3d 718 (Colo. Ct. App. 2001). That question has not been broached by our appellate courts and any such policy must emanate from the higher level of our courts.

The absence of specific direction to the contrary requires this court to look to traditional contract and tort principles to consider that the lack of a claim by the appellant that the appellee/Cutler Group was negligent and the lack of a contractual obligation of warranty along with the lack of an actionable statement of public policy, under the present state of the law in the Commonwealth of Pennsylvania, the appellant could not prevail.

## CONCLUSION

For those reasons, we sustained appellee's demurrer and dismissed appellant's complaint.