Michael REIS, Sr. and Lawrence J. Katz, on Their Own Behalf and as Assignees of Weaver Nut Company, Inc., Plaintiffs

v.

**BARLEY, SNYDER, SENFT & COHEN LLC., Defendant.**

Civil Action No. 05–CV–01651.

United States District Court, E.D. Pennsylvania.

April 2, 2007.

Lynanne B. Wescott, Esquire, On behalf of Plaintiffs.

Arthur W. Lefco, Esquire, On behalf of Defendant.

### AMENDED ORDER[1]

GARDNER, District Judge.

NOW, this 2nd day of April, 2007, upon consideration of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), which motion was filed May 2, 2006; upon consideration of Plaintiffs' Opposition to Defendant's Motion to Dismiss Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), which opposition was filed May 19, 2006; upon consideration of the briefs of the parties; after oral argument held November 28, 2006; and for the reasons expressed in the accompanying Opinion,

IT IS ORDERED that defendant's motion to dismiss is granted in part, and denied in part.

IT IS FURTHER ORDERED that defendant's motion to dismiss the claim of breach of fiduciary duty brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz, in their individual capacities, against defendant in Count I of plaintiffs' Amended Complaint, is granted.

IT IS FURTHER ORDERED that the claim of breach of fiduciary duty brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz, individually, is dismissed from Count I of plaintiffs' Amended Complaint.

IT IS FURTHER ORDERED that defendant's motion to dismiss the claim of professional negligence brought by plain-

---

1. This Amended Order modifies the Order dated and filed March 30, 2007 to change all references to the cause of action alleged in Count IV of plaintiffs' Amended Complaint from "interference with an advantageous relationship" to "tortious interference with contractual relations". The amendment also adds this footnote of explanation as footnote 1 and renumbers the original footnotes accordingly. In all other respects this Amended Order is identical to the original Order.

tiffs Michael Reis, Sr. and Lawrence J. Katz, individually, against defendant in Count II of plaintiffs' Amended Complaint, is granted.

*IT IS FURTHER ORDERED* that the claim of professional negligence brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz, individually, is dismissed from Count II of plaintiffs' Amended Complaint.

*IT IS FURTHER ORDERED* that defendant's motion to dismiss Count III of plaintiffs' Amended Complaint is granted.[2]

*IT IS FURTHER ORDERED* that Count III is dismissed from plaintiffs' Amended Complaint.

*IT IS FURTHER ORDERED* that defendant's motion to dismiss the claim of tortious interference with contractual relations brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz, individually, against defendant in Count IV of plaintiffs' Amended Complaint, is granted.

*IT IS FURTHER ORDERED* that the claim of tortious interference with contractual relations brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz, individually, is dismissed from Count IV of plaintiffs' Amended Complaint.

*IT IS FURTHER ORDERED* that defendant's motion to dismiss Count V of plaintiffs' Amended Complaint is granted.[3]

*IT IS FURTHER ORDERED* that Count V is dismissed from plaintiffs' Amended Complaint.

*IT IS FURTHER ORDERED* that, in all other respects, defendant's motion to dismiss is denied.[4]

*IT IS FURTHER ORDERED* that defendant shall have until April 30, 2007 to file a response to plaintiffs' Amended Complaint.

### *AMENDED OPINION*[5]

This matter is before the court on Defendant's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed.

---

**2.** Count III alleges a cause of action for abuse of process brought by plaintiffs Reis and Katz, individually, against defendant.

**3.** Count V alleges a cause of action for conversion brought by plaintiffs Reis and Katz, individually, against defendant.

**4.** As a result of these rulings, the following six claims against defendant Barley Snyder remain in this lawsuit: Count I:(1) breach of fiduciary duty brought by plaintiffs as assignees of the rights of Weaver Nut Company, Inc. ("Company"); (2) aiding and abetting breach of a fiduciary duty brought by plaintiffs individually; (3) aiding and abetting breach of a fiduciary duty brought by plaintiffs as assignees of the Company. Count II:(4) professional negligence brought by plaintiffs as assignees of the Company. Count IV:(5) tortious interference with contractual relations brought by plaintiffs as assignees of the Company. Count VI:(6) breach of contract brought by plaintiffs as assignees of the Company. (Defendant did not include Count VI in its motion to dismiss. Accordingly, Count VI remains in the Amended Complaint.)

**5.** This Amended Opinion modifies the Opinion filed March 30, 2007 to change all references to the cause of action alleged in Count IV of plaintiffs' Amended Complaint from "interference with an advantageous relationship", "tortious interference with an advantageous relationship", "interference with a contractual relationship", and "interference with contractual relations" to "tortious interference with contractual relations". The amendment also changes the subheading *"Interference with Relationship"* on page 31 of the original Opinion to *"Interference with Contractual Relations"*.

The amendment also adds this footnote of explanation as footnote 1, and renumbers the original footnotes accordingly. An explanation of why the changes were made has been added to footnote 17 (formerly footnote 16 in the original Opinion). The reference on page 28, line 4, of the original Opinion to "footnote 10," has been changed to "footnote 12,". In all other respects this Amended Opinion is identical to the original Opinion.

R.Civ.P. 12(b)(6), which motion was filed May 2, 2006. Plaintiffs' Opposition to Defendant's Motion to Dismiss Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) was filed May 19, 2006. The matter was briefed by the parties.[6] Oral argument was conducted before me on November 28, 2006.

The matter was taken under advisement at the conclusion of oral argument on November 28, 2006. Hence this Opinion. For the reasons expressed below, I grant in part, and deny in part defendant's motion to dismiss.

## JURISDICTION AND VENUE

This action is before the court on diversity jurisdiction. Plaintiff Michael Reis, Sr. is a resident of the State of Illinois and plaintiff Lawrence J. Katz is a resident of the State of New Jersey. Defendant Barley, Snyder, Senft & Cohen, LLC is a Pennsylvania limited liability company. The amount in controversy is in excess of $75,000. *See* 28 U.S.C. § 1332. Venue is proper because plaintiffs allege that the facts and circumstances giving rise to the cause of action occurred in this judicial district. 28 U.S.C. §§ 118, 1391.

## PROCEDURAL HISTORY

On April 10, 2005 plaintiffs Reis and Katz, on their own behalf and as assignees of Weaver Nut Company, Inc., filed their initial Complaint in this matter. The original Complaint alleged five causes of action as follows: breach of fiduciary duty (Count I); professional negligence (Count II); abuse of process (Count III); tortious interference with contractual relations (Count IV); and conversion (Count V).

On June 23, 2005 defendant filed its initial motion to dismiss. On July 7, 2005 plaintiffs responded, which included a request to amend the Complaint. My Order dated March 17, 2006 and filed March 20, 2006 granted plaintiffs' request.

On April 12, 2006 plaintiffs filed their Amended Complaint. The Amended Complaint contains the original five causes of action and an additional cause of action for breach of contract (Count VI) On May 2, 2006 defendants filed their second motion to dismiss. On May 19, 2006 plaintiffs responded. It is this second motion to dismiss which is before me for disposition.

## SUMMARY OF ORDER

Specifically, I grant defendant's motion to dismiss that portion of Count I of plaintiffs' Amended Complaint brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz, in their individual capacities, alleging a breach of fiduciary duty by defendant law firm, Barley, Snyder, Senft & Cohen, LLC ("Barley Snyder"). I deny defendant's motion to dismiss the remaining portions of Count I:(1) breach of fiduciary duty brought by plaintiffs Reis and Katz as assignees of the rights of Weaver Nut Company, Inc. ("Company"); (2) aiding and abetting breach of a fiduciary duty brought by Reis and Katz individually; and (3) aiding and abetting breach of a fiduciary duty brought by Reis and Katz as assignees of the Company.

Also, I grant defendant's motion to dismiss that portion of Count II alleging a claim of professional negligence against defendant Barley Snyder, brought by plaintiffs Reis and Katz, individually. I

**6.** Defendant filed a Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) on May 2, 2006. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint was filed May 19, 2006. Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(6) was filed with my permission on June 5, 2006.

deny defendant's motion to dismiss the remaining portion of Count II alleging professional negligence against Barley Snyder, brought by Reis and Katz as assignees of the Company.

I grant defendant's motion to dismiss Count III of plaintiffs' Amended Complaint alleging a cause of action against defendant for abuse of process brought by plaintiffs Reis and Katz in their individual capacities. There are no other claims in Count III.

Moreover, I grant defendant's motion and dismiss from Count IV of the Amended Complaint the claims of Reis and Katz, individually, alleging tortious interference with contractual relations by defendant. I deny defendant's motion to dismiss the remaining portion of Count IV alleging tortious interference with contractual relations against Barley Snyder, brought by Reis and Katz as assignees of the Company.

Finally, I grant defendant's motion to dismiss Count V of plaintiffs' Amended Complaint alleging a cause of action against Barley Snyder for conversion brought by plaintiffs Reis and Katz in their individual capacities. There are no other claims in Count V.

Count VI of plaintiffs' Amended Complaint alleges breach of contract. It was brought against defendant Barley Snyder by plaintiffs Reis and Katz in their capacity as assignees of the rights of the Company. Defendant did not include Count VI in

its motion to dismiss. Accordingly, that count remains in this lawsuit.

As a result of these rulings, the following six claims against defendant Barley Snyder remain in this lawsuit: Count I:(1) breach of fiduciary duty brought by plaintiffs as assignees of the Company; (2) aiding and abetting breach of a fiduciary duty brought by plaintiffs individually; (3) aiding and abetting breach of a fiduciary duty brought by plaintiffs as assignees of the Company. Count II:(4) professional negligence brought by plaintiffs as assignees of the Company. Count IV:(5) tortious interference with contractual relations brought by plaintiffs as assignees of the Company. Count VI:(6) breach of contract brought by plaintiffs as assignees of the Company.

### SUMMARY OF DECISION

I granted defendant's motion to dismiss plaintiffs' Amended Complaint in part and denied it in part for the following reasons. I dismissed all of the claims contested on the grounds of a release[7] in the motion to dismiss, which claims were brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz acting in their individual capacity: breach of fiduciary duty (Count I), professional negligence (Count II), abuse of process (Count III), tortious interference with contractual relations (Count IV), and conversion (Count V).

---

7. In their Amended Complaint plaintiffs brought six claims in their individual capacities and five claims in their capacity as assignees for Weaver Nut Company, Inc. In its motion to dismiss, defendant successfully objected to five of the six individual claims on the ground that they were barred by a release executed by the parties. Defendant did not raise the bar of the release regarding plaintiffs' sixth individual claim, a claim for aiding and abetting breach of a fiduciary duty alleged in Count I of the Amended Complaint.

In fact, in its reply brief, defendant conceded that the release executed by the parties did not release the claim brought by plaintiffs, individually, for aiding and abetting breach of a fiduciary duty. See footnote 5, below. However, defendant objected to the aiding and abetting claim (as brought by plaintiffs Reis and Katz both individually and as assignees for the Company) on the grounds that Pennsylvania does not recognize such a cause of action.

I dismissed these counts because plaintiffs Reis and Katz entered into a release between themselves and Weaver Nut Company, Inc. and the other shareholders of the company (E. Paul Weaver, III and his wife Miriam J. Weaver). The release document released the Weavers, the Company, and its officers, directors and employees from all liability. Even though the release specified that it did not release defendant law firm from any claims, I concluded in this diversity action that, if confronted with the issue, the Supreme Court of Pennsylvania would recognize and rule that the release of the principals (the Company and the Weavers) would act as a release of the agent (defendant law firm Barley Snyder).

I denied defendant's motion to dismiss concerning all of the claims contested in the motion to dismiss which were brought by plaintiffs Reis and Katz in their capacity as assignees of Weaver Nut Company, Inc.: breach of fiduciary duty (Count I), aiding and abetting breach of a fiduciary duty (Count I), professional negligence (Count II), and tortious interference with contractual relations (Count IV). I declined to dismiss those counts because I concluded that accepting plaintiffs' well-pled factual allegations as true and drawing all reasonable inferences therefrom in favor of plaintiffs, as I am required to do in a Rule 12(b)(6) motion to dismiss, the complaint alleges sufficient facts to support each of those claims.

Specifically, the Amended Complaint sufficiently alleges that defendant law firm had a conflict of interest in representing both the Company and two of its competitors, and in representing both the Company as a creditor and a debtor of the Company. The Amended Complaint sufficiently alleges that defendant law firm had a fiduciary duty of loyalty to its Company client, and breached that duty by representing competitors of the Company and a Company debtor, and by failing to notify the Company of the conflict.

The Amended Complaint also sufficiently alleges that defendant law firm committed professional negligence because its conflict of interest caused by its conflicting representations caused harm to the Company. In addition, the Amended Complaint sufficiently alleges that defendant law firm was guilty of tortious interference with contractual relations. Because Barley Snyder represented both Mr. Weaver and the Company, it was required to insure that it did not harm the contractual relations of either of its clients. The complaint sufficiently alleges that defendant breached that duty.

Finally, I denied defendant's motion to dismiss the cause of action for aiding and abetting breach of a fiduciary duty which plaintiffs Reis and Katz brought both in their individual capacities and as assignees of the Company. I rejected defendant's contention there is no cause of action in Pennsylvania for that tort. There is a split of decisions within the district courts of this circuit and this district on this issue.

I found well-reasoned the decisions of those of my colleagues who found that Pennsylvania recognized such a cause of action, and a decision by the Commonwealth Court of Pennsylvania recognizing the cause of action. *Koken v. Steinberg*, 825 A.2d 723 (Pa.Commw.2003).

 Opinions of intermediate state courts are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise. *Nationwide Mutual Insurance Company v. Buffetta*, 230 F.3d 634, 637 (3d. Cir.2000). Based upon the existing caselaw, I cannot so conclude. Therefore I am constrained to follow *Koken* and predict that the Supreme Court of Pennsylvania would recog-

nize a cause of action for breach of the tort of aiding and abetting breach of a fiduciary duty, if presented with the issue.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss examines the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). In determining the sufficiency of the complaint, the court must accept all plaintiff's well-pled factual allegations as true and draw all reasonable inferences therefrom in favor of plaintiff. *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir.1997). Moreover, the court may consider those facts alleged in the complaint as well as matters of public record, Orders, facts in the record and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385–1386 (3d Cir.1994).

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the rules require is "a short and plain statement of the claim" that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Conley*, 355 U.S. at 47, 78 S.Ct. at 103, 2 L.Ed.2d at 85.

Thus, a court should not grant a motion to dismiss unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Graves*, 117 F.3d at 726 (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84.)

## FACTS

Accepting as true the facts alleged in plaintiffs' Amended Complaint and all reasonable inferences which can be drawn therefrom, as I am required to do in a Rule 12(b)(6) motion to dismiss, the pertinent facts are as follows.

Weaver Nut Company, Inc., is a Pennsylvania corporation which until mid–2001 was owned exclusively by E. Paul Weaver, III and his wife, Miriam J. Weaver. In 2001 the Company was in significant financial trouble and was in default on loan agreements with its bank and others. The bank ultimately exercised its rights under numerous forbearance agreements and appointed a trustee over the Company's affairs.

The Trustee explored options to reduce the bank's financial exposure. The Trustee ultimately became aware of the firm Summit Private Capital Group ("Summit") with which plaintiffs Reis and Katz were affiliated. On June 12, 2001 the Company, engaged Summit as a financial consultant to turn the company around financially. On that date the Company, through Mr. Weaver, executed a Merchant Banking and Corporate Development Agreement ("Development Agreement") with Summit. The Company passed a corporate resolution ratifying the Development Agreement. The resolution provided, in part, that the Development Agreement was for the Company's benefit.

Mr. Reis was named Secretary, Treasurer and Chief Financial Officer ("CFO") of the Company. Mr. Katz secured a funding source to provide corporate restructuring and financial management advice to the Company and helped implement new management policies, systems and controls to improve the profitability of the Company. Reis and Katz became 50% shareholders in the Company (25% each) and Mr. and Mrs. Weaver retained the remaining 50% of the shares (25% each).

Throughout 2001 and 2002, Reis and Katz helped the Company restructure its debt, obtain a new revolving line of credit in the amount of $1,500,000, hire competent senior managers and implement a state-of-the-art inventory control system. By the beginning of 2003 the Company was operating at a profit after having lost

one million dollars in 1999–2000 under the direction of E. Paul Weaver, III. Furthermore, the marketability value of the Company rose to in excess of $6,000,000, and it was on track to achieve a $1,500,000 operating profit without any additional acquisitions.

A key factor in the successful turnaround of the Company was the continuing effort to minimize or eliminate Mr. Weaver's unsound prior business practices including below-cost sales to customers, irrational purchasing without regard to existing inventory and anticipated demand, sale of "out of date" inventory as current product, misleading marketing techniques, questionable self-dealing and related-party transactions and maintenance of a hostile workplace.

In the beginning of 2003, Mr. Weaver began secret negotiations with defendant law firm, Barley Snyder, concerning the future of the Company. In addition, Mr. Weaver and John Maksel met with Barley Snyder attorneys. Mr. Maksel would later become the new CFO of the Company after Reis and Katz were fired. Mr. Weaver retained Barley Snyder on both his own and the Company's behalf and paid the firm's retainer fee with Company funds. Mr. Reis and Mr. Katz did not know about these discussions, meetings or the retention of Barley Snyder as the attorneys for Mr. Weaver and the Company.

In January 2003 Reis and Katz met with Frank McSorley and E. Paul Weaver IV, ("Weaver IV") the son of E. Paul Weaver, III. Weaver IV and McSorley were the owners of Packaged Foods, Inc. The purpose of the meeting was to discuss the failure of Packaged Foods to pay $100,000 which it owed to the Company as evidenced by a Note executed by Packaged Foods in favor of the Company.

Packaged Foods was a spin-off of the Company packaging department, and the Note was given on August 31, 2001 when the spin-off occurred. Moreover, Packaged Foods owed the Company an additional $82,000 in accounts receivable which had been converted to a Note executed by Packaged Foods in favor of the Company. That amount also remained unpaid. Package Foods was both a customer, and a competitor, of the Company.

During the meeting, McSorley and Weaver IV told Reis and Katz that attorneys at Barley Snyder had advised them that the filing by the Company of a UCC–1 form pursuant to the Uniform Commercial Code, intending to secure the Notes, was unenforceable. On January 9, 2003 the Company notified Packaged Foods that it was exercising its rights of reclamation in the product and equipment secured by the UCC–1 lien.

On January 27, 2003, Stephen D. Flaherty, an attorney at Barley Snyder, sent a letter to several attorneys, including counsel for the Company, on behalf of his client Ted Baxter, offering to purchase certain assets of Packaged Foods. Mr. Baxter formed another entity named Manna Foods to complete this purchase. Manna Foods intended to be a competitor of the Company.

Manna Foods, represented by Barley Snyder, completed the purchase of the assets of Packaged Foods in April 2003. Upon completion of the sale, Packaged Foods, with the advice and knowledge of Barley Snyder, failed to pay the Notes due to the Company.

Barley Snyder never investigated the impact upon the Company of its actions on behalf of Mr. Weaver. Furthermore, because of the fiduciary duties Mr. Weaver owed to the Company and the other shareholders (Reis and Katz), Barley Snyder should have investigated the impact of its actions on its client (the Company) prior to acting at the direction of Mr. Weaver.

Barley Snyder attorneys worked with Mr. Weaver, his son and others to escape the obligations of the Development Agreement, which had saved the Company from financial ruin, and to conduct business in the manner previously perpetrated by Mr. Weaver, which has caused the Company's previous financial difficulties. Barley Snyder's representation of both Mr. Weaver and the Company was a conflict of interest because the personal interests of Mr. Weaver were detrimental to both the Company, and Reis and Katz.

On April 11, 2003, acting on behalf of Mr. Weaver and the Company, Barley Snyder attorney Shawn M. Long, terminated the Development Agreement, fired Mr. Reis as Company CFO and soon thereafter terminated key members of the management team put in place by Reis and Katz. Moreover, on that same day, Barley Snyder threatened Reis and Katz with criminal sanctions if they entered the Company's premises again.

By firing Reis and Katz, Barley Snyder placed the Company in violation of the Development Agreement and jeopardized the finances of its client (the Company). Credit extensions were reviewed and altered to the detriment of the Company. Moreover, the Company's financing had to be renegotiated.

After the firing of Reis as CFO and the termination of Reis and Katz as consultants, various consultants were hired with the assistance and direction of Barley Snyder attorneys. The new consultants took direction from Barley Snyder. The new consultants were paid large sums of money with Company funds and were unable to properly operate the Company. Moreover, other employees who filled positions vacated by the terminations took direction directly from Barley Snyder attorneys.

The Company suffered from the actions of Mr. Weaver and Barley Snyder. The amount of accounts payable by the Company increased to over one million dollars. Funding advances were obtained at less than favorable interest rates. Deliveries could not be made because raw materials could not be purchased, and the computer system was compromised by staff terminations to the point that the Company was unable to track its financial position.

Moreover, Mr. Weaver, with the advice and assistance of Barley Snyder, opened a new bank account, changed the address on purchase orders from the outside inventory financing firm to the address for the Company, and diverted tens of thousand of dollars from the Company. All of these acts reduced the value of the Company's equity.

On April 24, 2003, Reis and Katz were notified that Frank McSorley, formerly of Packaged Foods, was now in a top management position at the Company. On April 30, 2003 Barley Snyder commenced a legal action in the Court of Common Pleas of Lancaster County, Pennsylvania alleging that what could be deemed to be criminal acts were committed by Reis and Katz. The purpose of the lawsuit was to harass Reis and Katz, cause them injury and force them out of the Company.

Barley Snyder never disclosed to the Company its conflict of interest in its representing both Packaged Foods and Manna Foods, entities which were in direct competition with its other client, the Company. Barley Snyder's clients had conflicting interests, and Barley Snyder never disclosed these conflicts to their respective clients.

Mr. Weaver owed fiduciary duties to Reis and Katz as 50% shareholders of the Company, and Barley Snyder aided and abetted the breach of Mr. Weaver's fiduciary duties. Barley Snyder entered into its professional relationship with Mr. Weaver, to the detriment of the Company, for the purpose of acquiring large legal fees.

On December 15, 2003, Reis and Katz settled their differences with Mr. Weaver and returned their 50% interest in the Company in return for the assignment to Reis and Katz of any claims that the Company might have, or that Reis and Katz might have as shareholders, against Barley Snyder. No specific claims of either Reis, Katz or the Company against Barley Snyder were released. However, specific claims against Mr. and Mrs. Weaver were released by Reis and Katz, including claims for breach of fiduciary duty, shareholder oppression, and any other misconduct by the Weavers.

## DISCUSSION

### Plaintiffs' Claims

In its motion to dismiss, defendant law firm contends that plaintiffs' Amended Complaint fails to state a cause of action in any of Counts I through V. Count I contains four causes of action, specifically, breach of a fiduciary duty owed to plaintiffs Reis and Katz, individually, and also breach of fiduciary duty brought by plaintiffs Reis and Katz as assignees of the rights of Weaver Nut Company. In addition, there are causes of action for aiding and abetting breach of a fiduciary duty brought by plaintiffs Reis and Katz, individually, and as assignees of the rights of the Company.

Count II asserts a cause of action for professional negligence brought by plaintiffs Reis and Katz, individually, and by Reis and Katz as assignees of the rights of the Company. Count III avers a cause of action for abuse of process brought by plaintiffs Reis and Katz, individually.

Count IV alleges a cause of action for tortious interference with contractual rela-

tions brought by plaintiffs Reis and Katz, individually, and by Reis and Katz as assignees of the rights of the Company. Count V asserts a cause of action for conversion brought by plaintiffs Reis and Katz, individually.

Finally, Count VI avers a cause of action for breach of contract brought by plaintiffs Reis and Katz as assignees of the rights of the Company. Defendant did not include Count VI in its motion to dismiss. Thus, I do not address that claim here. Below, I address defendant's motion to dismiss each count separately.

### Release

Defendant contends that plaintiffs Reis and Katz entered into a release between themselves, the Weavers and the Company which provides that Reis and Katz released the Company and each of its officers, directors and employees from any liability for all claims.[8]

The pertinent parts of the release provide that Reis, Katz and Summit release E. Paul Weaver, III, Miriam Weaver, Weaver Nut Company and each of their successors, heirs assigns, officers, directors and employees:

> from all claims related to or arising from Reis's and Katz's employment at WNC, all claims related to or arising from the termination of their employment, or related to or arising under the Corporate Development Agreement, all claims related to or arising from termination of the Corporate Development Agreement, all claims related to or arising from the allegations of breach of fiduciary duty, shareholder oppression, and any and all other misconduct alleged by Reis and Katz ... This release shall apply to all claims herein specified, whether known

---

8. See Exhibit 6 attached to plaintiffs' Amended Complaint and Exhibit C attached to defendant's motion to dismiss. These exhibits provide portions of the release in question. None of the parties provided the court with the entire release.

or unknown, whether in contract or tort or under any statute, under any other legal theory, either at law or equity. Paragraph 6 of Exhibit 6 attached to plaintiffs' Amended Complaint.

The release further specifically provides that "Reis and Katz do not release the law firm of Barley, Snyder, Senft & Cohen, LLC, nor any other person other than the Released Persons, from any claims...." [9]

Defendant relies on the decisions of the Supreme Court of Pennsylvania in *Mamalis v. Atlas Van Lines*, 522 Pa. 214, 560 A.2d 1380 (Pa.1989) and the Superior Court of Pennsylvania in *Pallante v. Harcourt Brace Jovanovich, Inc.*, 427 Pa.Super. 371, 629 A.2d 146 (Pa.Super.1993) for the proposition that, as a matter of law, the release of the principals serves to release claims of any person or entity acting as an agent, servants or employees of the principals.

Moreover, notwithstanding the attempt by plaintiffs Reis and Katz to preserve such claims, defendant contends that the settlement agreement between and among Reis, Katz, the Weavers and the Company has terminated the individual claims of Reis and Katz in this matter except for the individual claim of aiding and abetting breach of a fiduciary duty.[10]

Plaintiffs Reis and Katz contend that they specifically carved out of the release between themselves, the Weavers and the Company any claims that Reis and Katz have against Barley Snyder. Thus, plaintiffs Reis and Katz contend that they have not released any claims which they aver in their Amended Complaint. Specifically, plaintiffs assert that what they allege in their Amended Complaint is not vicarious liability, but rather is direct liability of Barley Snyder. For the following reasons, I disagree with plaintiffs and dismiss all the individual claims of Reis and Katz except the claim for aiding and abetting the breach of fiduciary duty.

Plaintiffs' individual claims against defendant all arise from allegations that Barley Snyder acted at the direction of Mr. Weaver in his individual capacity and as the Company's President, to the disadvantage of the individual plaintiffs. Therefore the liability of the Company or Mr. Weaver would arise, if at all, vicariously from the acts of its agent, Barley Snyder.

In *Mamalis, supra*, the Supreme Court of Pennsylvania held that where one party is only vicariously liable and the other party engages in injurious conduct while acting as its agent, they are not joint tortfeasors because the claim of vicarious liability is inseparable from the claim against the agent, and any cause of action is based on the acts of only one tortfeasor. There, the court was faced with the situation of a plaintiff releasing an agent. The Court held that release of the agent constituted a release of the principal.

In this case, we have the opposite situation. Here, the parties released were the principals; namely, the Weavers and the Company. This scenario, while not addressed by the Supreme Court of Pennsylvania in *Mamalis* has been addressed by the Superior Court of Pennsylvania in *Pallante, supra*.

---

9. See Paragraph 7 of Exhibit 6 attached to plaintiff's Amended Complaint.

10. In footnote 3 on page 12 of Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) filed June 5, 2006 defendants state: "Thus, all claims asserted by Plaintiffs, in their individual capacities, except for the aiding and abetting breach of fiduciary duty claim have been foreclosed as a matter of law." I consider this statement by defendant as a concession that the release entered into between Reis, Katz, the Weavers and the Company does not affect the individual claim by Reis and Katz for aiding and abetting breach of a fiduciary duty against Barley Snyder.

In *Pallante,* the Superior Court applied the reasoning of the *Mamalis* decision, together with the reasoning of other courts. The Superior Court held that because "the law seeks to protect an injured party's right to payment for a single injurious act from either a vicariously liable principal or an independently liable agent, the party's decision to settle with and release one acts as a release of the other, given their non-jointfeasor status." 427 Pa.Super. at 379, 629 A.2d at 150.

As a preliminary matter, I must determine whether the Supreme Court of Pennsylvania would recognize that a release by a principal would act as a release of an agent. This is the question that the Supreme Court of Pennsylvania did not answer in *Mamalis.* As a United States District Court exercising diversity jurisdiction, I am obliged to apply the substantive law of Pennsylvania. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ If the Pennsylvania Supreme Court has not addressed a precise issue, a prediction must be made, taking into consideration "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Nationwide Mutual Insurance Company v. Buffetta,* 230 F.3d 634, 637 (3d

Cir.2000) (citation omitted). "The opinions of intermediate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise.'" 230 F.3d at 637 (citing *West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

■ Based upon the reasoning of the Superior Court in *Pallante,* which I find persuasive, and considering that the *Pallante* holding was later followed in *Willard v. Interpool, Ltd.,* 758 A.2d 684 (Pa.Super.2000), in light of the fact that in the nearly 14 years since *Pallante* was decided the Supreme Court of Pennsylvania has not overruled or overturned the holding of *Pallante* and in the absence of any other persuasive caselaw or data, I conclude that the Supreme Court of Pennsylvania would recognize that a release by a principal would act as a release of an agent. *See Nationwide, supra.*

■ Accordingly, I grant defendant's motion to dismiss the individual claims of plaintiffs Reis and Katz based upon the release of those claims against the principals. Specifically, I grant defendant's motion to dismiss plaintiffs' individual claims of breach of fiduciary duty contained in Count I, professional negligence in Count II,[11] abuse of process in Count III, tortious interference with contractual relations in Count IV, and conversion in Count V.[12]

---

**11.** I would also grant defendant's motion to dismiss the individual claims of Reis and Katz for professional negligence in Count II of their Amended Complaint because Reis and Katz do not assert in their Amended Complaint that they had a contract for professional legal services with Barley Snyder. This is as opposed to the claim for professional negligence that Reis and Katz have as the assignees of the rights of the Company, which was a client of Barley Snyder. I will address the Company's professional negligence claim below.

**12.** I would also grant defendant's motion to dismiss Count V because plaintiffs have not alleged a cause of action for conversion. Specifically, plaintiffs Reis and Katz do not aver in their Amended Complaint that defendant seized or exercised dominion and control over their stock certificates. Rather, what plaintiffs allege is that defendant "interfered with Mr. Reis' and Mr. Katz' ownership and/or right to possession of their interests in the Company," (Amended Complaint at paragraph 103) and "[d]efendant intended to seize

### Breach of Fiduciary Duty

Count I of plaintiffs' Amended Complaint asserts a cause of action for breach of fiduciary duty. Defendant moves to dismiss this claim based upon its assertion that plaintiffs fail to establish the breach of any duty owed to the Company. For the following reasons, I disagree.

■ An attorney owes a fiduciary duty to his client which "demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 253, 602 A.2d 1277, 1283 (Pa.1992).

■ Here, the Company alleges that its attorneys, Barley Snyder breached its fiduciary duties to the Company in a number of ways. Specifically, plaintiffs assert that Barley Snyder had a conflict of interest in representing both Mr. Weaver and the Company, a conflict of interest in representing Packaged Foods and the Company and by representing Manna Foods and the Company, among other allegations.

Based upon the allegations contained in plaintiffs' Amended Complaint, which I must accept as true for the purposes of this motion, I cannot say beyond a doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Graves*, 117 F.3d at 726.

Accordingly, I deny defendant's motion to dismiss the claim for breach of fiduciary duty brought by Reis and Katz as assignees of the Company.

### Aiding and Abetting

Count I of plaintiffs' Amended Complaint contains a claim of aiding and abetting the breach of a fiduciary duty brought by plaintiffs Katz and Reis, both individually and as assignees of the claims of the Company.

Defendant contends that there is no cause of action recognized in Pennsylvania for aiding and abetting breach of a fiduciary duty. Specifically, defendant asserts that the Supreme Court of Pennsylvania has never affirmatively recognized a cause of action for this tort. Thus, I must again predict how the Supreme Court of Pennsylvania will rule on this issue. *Nationwide, supra.*

In *Pierce v. Rossetta Corporation*, 1992 WL 165817, 1992 U.S.Dist. LEXIS 9065 (E.D.Pa. June 15, 1992) (Dubois, J.) my colleague, now Senior United States District Judge Jan E. Dubois, predicted that, if given the opportunity, the Supreme Court of Pennsylvania would recognize a cause of action for aiding and abetting breach of a fiduciary duty. In *Pierce*, Judge Dubois set forth the following three elements of a cause of action for aiding and abetting breach of a fiduciary duty under Pennsylvania law: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in

---

Mr. Reis' and Mr. Katz' property." (Amended Complaint at paragraph 105).

In order to assert a claim of conversion under Pennsylvania law, plaintiffs must allege the "deprivation of another's right to property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corporation v. York Bank and Trust Company*, 69 F.3d 695, 704 (3d Cir.1995). (Citation omitted.) Here, plaintiffs' Amended Complaint is devoid of any allegation that Barley Snyder deprived plaintiffs of their stock certificates or of their interests in the Company. Rather, it is clear that Reis and Katz still possessed their combined 50% ownership of the Company because that 50% ownership interest was transferred back to the Weavers in plaintiffs' settlement with the Weavers.

Accordingly, I would also grant defendant's motion to dismiss Count III on that basis.

effecting that breach. 2007 WL 1087462, **2–3, 1992 U.S.Dist. LEXIS 9065 at *8.

In *Koken v. Steinberg*, 825 A.2d 723 (Pa.Commw.2003) the Commonwealth Court of Pennsylvania became the first Pennsylvania appellate court to officially recognize a cause of action for aiding and abetting breach of a fiduciary duty. The Commonwealth Court adopted the test formulated by Judge Dubois in *Pierce* after analyzing prior cases of the Supreme Court of Pennsylvania[13], the Superior Court of Pennsylvania[14], and learned treatises.[15]

Prior to the Commonwealth Court's decision in *Koken*, the Superior Court of Pennsylvania in *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973 (Pa.Super.1985) had favorably discussed aiding and abetting but then held that *Burnside* was an improper vehicle for initial consideration of the cause of action.

There has been a split of decisions on the issue of whether to recognize this cause of action within the district courts of this judicial circuit. A number of district judges have recognized the cause of action.[16] Meanwhile, a number of district judges have refused to recognize this cause of action.[17] In addition, United States District Judge A. Richard Caputo in the United States District Court for the Middle District of Pennsylvania may have recently changed his position.[18]

In addition to the federal courts cited in footnote 12, above, a number of Pennsylvania state trial courts have applied the dictates of *Koken* to pending cases.[19] Finally,

---

**13.** *Skipworth by Williams v. Lead Industries Association, Inc.*, 547 Pa. 224, 690 A.2d 169 (Pa.1997).

**14.** *Cummins v. Firestone Tire & Rubber Company*, 344 Pa.Super. 9, 495 A.2d 963 (Pa.Super 1985)

**15.** Section 876 of the *Restatement (Second) of Torts*.

**16.** *Baker v. Family Credit Counseling Corporation*, 440 F.Supp.2d 392 (E.D.Pa.2006) (Dubois, S.J.); *Adena, Inc. v. Cohn*, 162 F.Supp.2d 351 (E.D.Pa.2001) (J.McG. Kelly, J.); *Stone Street Services, Inc. v. Daniels*, 2000 WL 1909373, 2000 U.S.Dist. LEXIS 18904 (E.D.Pa.Dec.29, 2000) (Padova, J.); *Kaiser v. Stewart*, 1997 WL 476455, 1997 U.S.Dist. LEXIS 12788 (E.D.Pa. Aug. 20, 1997) (Bartle, III., J.); and *Schuykill Skyport Inn, Inc. v. Rich*, 1996 U.S.Dist. LEXIS 12655 (E.D.Pa. Aug. 21, 1996) (Cahn, C.J.).

**17.** *In re Student Finance Corporation*, 335 B.R. 539 (D.Del.2005) (Farnan, J.); *WM High Yield Fund v. O'Hanlon*, 2005 WL 1017811, 2005 U.S.Dist. LEXIS 12064 (E.D.Pa. May 13, 2005) (Davis, J.); *Daniel Boone Area School District v. Lehman Brothers, Inc.*, 187 F.Supp.2d 400 (W.D.Pa.2002) (Smith, C.J.); *Klein v. Boyd*, 1996 WL 675554, 1996 U.S.Dist. LEXIS 17153 (E.D.Pa. Nov. 19, 1996) (Yohn, Jr., J.); and *S. Kane & Son Profit Sharing Trust v. Marine Midland Bank*, 1996 WL 325894, 1996 U.S.Dist. LEXIS 8023 (E.D.Pa. June 13, 1996) (Newcomer, J.).

**18.** In *Flood v. Makowski*, 2004 WL 1908221, 2004 U.S.Dist. LEXIS 16957 (M.D.Pa. Aug. 24, 2004) (Caputo, J.) Judge Caputo refused to recognize a cause of action for aiding and abetting breach of a fiduciary duty because it had not been recognized by the Supreme Court of Pennsylvania. However, in the recent decision of *Doe v. Liberatore*, 478 F.Supp.2d 742 (M.D.Pa.2007) (Caputo, J.) Judge Caputo addressed a claim for aiding and abetting breach of a fiduciary duty in a motion for summary judgment citing *Koken*, *supra*, without reference to his prior decision in *Flood*. Moreover, Judge Caputo applied the three elements of the cause of action first outlined in *Pierce*, *supra*, to determine whether to grant summary judgment in favor of defendants. I am uncertain if Judge Caputo has changed his prior position and now recognizes aiding and abetting breach of a fiduciary duty as a viable cause of action under Pennsylvania law.

**19.** *See Cruz v. Roberts*, 70 Pa.D & C.4th 225 (Pa.Com.Pl.2005) (Perezous, J.); and *Lichtman v. Taufer*, 2004 WL 1632574, 2004 Phila.Ct.Com.Pl. LEXIS 68 (C.C.P. Phila. July 13, 2004) (Jones, II, J.).

in the recent case of *Huber v. Taylor,* 469 F.3d 67 (3d Cir.2006) the United States Court of Appeals for the Third Circuit impliedly acknowledged the cause of action for aiding or abetting a breach of fiduciary duty by analyzing whether damages are required for such a claim under Pennsylvania law.

■ After review of all the relevant precedent, I find the decision of the Commonwealth Court of Pennsylvania in *Koken* persuasive and well-reasoned. As noted above, "the opinions of intermediate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise.'" *Nationwide,* 230 F.3d at 637.

With that standard in mind, I do not find the decisions of the district courts which have refused to follow *Koken* persuasive because the only reason given for failing to follow the Commonwealth Court's decision is that the Supreme Court of Pennsylvania has not yet ruled on the issue, and those judges do not want to expand Pennsylvania law.

I do not consider following the well-reasoned opinion in *Koken* as expanding Pennsylvania law. Rather, as constrained by the requirements of *Nationwide, supra,* I cannot simply disregard the *Koken* decision without being convinced that the Supreme Court of Pennsylvania would rule otherwise. Based upon the existing case-law, I cannot so conclude. Thus, I am constrained to follow *Koken* and predict that the Supreme Court of Pennsylvania would recognize the tort of aiding and abetting breach of a fiduciary duty if presented with the issue.

■ In applying the elements of aiding and abetting breach of a fiduciary duty to the facts pled in this case, I conclude that plaintiffs have satisfied the elements of the tort articulated by Judge Dubois. Specifically, plaintiffs have averred breach of a fiduciary duty owed to another because Mr. Weaver as President of Weaver Nut Company owed fiduciary duties to both Reis and Katz as shareholders and to the Company itself.

Moreover, plaintiffs have averred that defendant Barley Snyder had knowledge of the breach of fiduciary duty. Finally, plaintiffs have alleged substantial assistance or encouragement by Barley Snyder in effecting that breach. *Pierce,* 1992 WL 165817, **2–3, 1992 U.S.Dist. LEXIS 9065 at *8.

Accordingly, I deny defendant's motion to dismiss the claims in Count I of the Amended Complaint alleging aiding and abetting breach of a fiduciary duty which plaintiffs Reis and Katz brought both individually and as assignees of the Company.

### Professional Negligence

In Count II, plaintiffs' Amended Complaint alleges a cause of action for professional negligence against defendant Barley Snyder in its representation of the Company, brought by plaintiffs Reis and Katz as assignees of the rights of the Company.[20] Specifically, the Company alleges that Barley Snyder had a conflict of interest in representing both Mr. Weaver and the Company and that this conflict caused harm to the Company.

■ More specifically, the Company asserts that Barley Snyder did not exercise adequate due diligence in determining whether a conflict of interest would occur and alleges that attorneys of ordinary skill and knowledge would have done so. Fur-

---

**20.** As noted above I have already dismissed the claim of professional negligence brought individually by Messrs. Reis and Katz.

thermore, the Company contends that because of defendant's negligence, it was damaged and that defendant's negligence was the proximate cause of the Company's damages.

Defendant denies these allegations. However, taking plaintiffs' allegations as true, as I must under the applicable standard of review, I conclude that it is not free and clear from doubt that the Company has stated a cause of action upon which relief can be granted.

Accordingly, I deny defendant's motion to dismiss that portion of Count II brought by plaintiffs Reis and Katz as assignees of the Company which alleges professional negligence against defendant Barley Snyder.

*Interference with Contractual Relations*

■ Count IV of plaintiffs' Amended Complaint avers a cause of action for tortious interference with contractual relations brought by plaintiffs Reis and Katz as assignees of the Company.[21] To state a claim for tortious interference with contractual relations a plaintiff must allege: (1) the existence of a contract; (2) purposeful action by the defendant specifically intended to harm the existing relation; (3) absence of privilege or justification on the part of the defendant; and (4) actual legal damage as a result of defendant's conduct. *CAT Internet Services, Inc. v. Magazines.com, Inc.*, 2001 WL 8858, *4, 2001 U.S.Dist. LEXIS 8 at *14 (E.D.Pa. Jan. 4, 2001) (Padova, J.).

■ Defendant contends that plaintiffs do not state a cause of action because the actions of an attorney who is acting to protect the legal interests of his client are privileged for purposes of a claim for tortious interference with contractual relations. Thus, defendant contends that because its actions were privileged, plaintiffs fail to state a cause of action upon which relief can be granted. I disagree.

Plaintiffs' Amended Complaint avers that defendant's actions were not privileged with respect to the Company. Specifically, plaintiffs as assignees of the Company allege that because Barley Snyder represented both Mr. Weaver and the Company, it was required to ensure that it did not harm the contractual relations of either of its clients. Plaintiffs allege that what Mr. Weaver believed to be in his interest was not in the interest of the Company.

Based upon the allegations of plaintiffs' Amended Complaint, which I must accept as true for the purposes of this motion to dismiss, I cannot say that it appears beyond a doubt that plaintiffs can prove no set of facts in support of their claims for tortious interference with contractual relations which would entitle them to relief. *Graves*, 117 F.3d at 726.

Accordingly, I deny defendant's motion to dismiss that portion of Count IV relating to the Company.

*CONCLUSION*

For all the foregoing reasons I grant in part, and deny in part Defendant's Motion

---

**21.** As noted above, I dismissed that portion of Count IV relating to the individual claim brought by plaintiffs Reis and Katz.

In Count IV of plaintiffs' Amended Complaint, plaintiffs allege a cause of action for "Interference with an Advantageous Relationship". I know of no such cause of action in Pennsylvania jurisprudence. However, the facts alleged by plaintiffs in support of this cause of action are consistent with the elements of tortious interference with contractual relations, which is recognized as a cause of action in Pennsylvania. *See CAT Internet Services, Inc. v. Magazines.com, Inc.*, discussed below in this section of the Amended Opinion. Accordingly, I have referred to the cause of action averred in Count IV as "tortious interference with contractual relations" throughout this Amended Opinion.

to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6).