J-A17023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FRED POTOK, INDIVIDUALLY AND AS TRUSTEE OF THE FLOORGRAPHICS, INC., MINORITY SHAREHOLDER TRUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RICHARD G. REBH, RICHARD REBH, ELIZABETH REBH, EXECUTOR OF THE ESTATE OF GEORGE L. REBH, DECEASED, MICHAEL DEVLIN AND YVES ANIDJAR, NEWS AMERICA MARKETING IN-STORE SERVICES, LLC, NEWS AMERICA IN-STORE LLC, NEWS AMERICA MARKETING IN-STORE SERVICES, INC. | |
| APPEAL OF:  RICHARD G. REBH, ELIZABETH REBH, EXECUTOR OF THE ESTATE OF GEORGE L. REBH, DECEASED, MICHAEL DEVLIN AND YVES ANIDJAR | |
| | No. 444 EDA 2015 |

Appeal from the Order Entered January 5, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 090303768

\*\*\*\*\*

| | |
|---|---|
| FRED POTOK, INDIVIDUALLY AND AS TRUSTEE OF THE FLOORGRAPHICS, INC., MINORITY SHAREHOLDER TRUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| RICHARD REBH, ELIZABETH REBH, EXECUTOR OF THE ESTATE OF GEORGE L. REBH, DECEASED, MICHAEL DEVLIN | |

J-A17023-16

AND YVES ANIDJAR, NEWS AMERICA
MARKETING IN-STORE SERVICES, LLC,
NEWS AMERICA IN-STORE LLC, NEWS
AMERICA MARKETING IN-STORE
SERVICES, INC.

Appellees                          No. 647 EDA 2015

Appeal from the Judgment January 21, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2009 No. 03768

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                 **FILED APRIL 13, 2017**

Fred Potok, individually and as Trustee of the Floorgraphics, Inc., Minority Shareholder Trust ("Potok"), appeals from the judgment entered in the Court of Common Pleas of Philadelphia County, regarding Potok's action against Appellees News America Marketing In-Store Services, LLC, News America In-Store LLC, and News America Marketing In-Store Services, Inc. ("News America") for breach of fiduciary duties.  Upon careful review, we affirm.

The following facts have been gleaned from the trial court's findings of fact, dated September 16, 2014.  Potok is the founder of Floorgraphics, Inc. ("FGI"), which was in the business of facilitating in-store advertising and

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

marketing.[1] Potok was a former officer and director of FGI and is currently a minority shareholder. He is also the trustee of the Floorgraphics, Inc., Minority Trust, which was established to hold shares of FGI common stock for the benefit of certain FGI minority shareholders. Potok ran FGI from 1994 through 1997. In 1998, FGI secured $5 million in financing from Interlaken Capital, Inc. As a condition of its investment, Interlaken required that Richard Rebh, who had joined FGI as a consultant in 1997 and became a full-time employee in 1998, become FGI's CEO. FGI subsequently experienced dramatic growth, with yearly revenues peaking at $70 million in 2004. After Richard Rebh became CEO, Potok's role with FGI became limited; his employment was terminated in August 2006 and he was removed as a director in July 2007.

George Rebh was FGI's executive vice president, secretary, treasurer, a director, and a shareholder. Yves Anidjar is the CFO and a shareholder of FGI. Mike Devlin is FGI's senior vice president and a shareholder. Together, the Rebhs, Anidjar and Devlin (collectively, "Individual Defendants") own the majority of FGI's stock.

News America is also involved in the in-store advertising business. Beginning in 2000, News America became a fierce competitor of FGI, luring

---

[1] In essence, FGI acted as a middle-man between retailers and consumer packaged goods manufacturers who pay to advertise their products in retail establishments.

away FGI personnel and retailer accounts. In order to lure FGI's retailers away, News America made huge guarantees for which it paid above market price. Competition from News America eventually resulted in sharp declines in revenue for FGI.

In 2004, FGI initiated litigation against News America in federal district court in New Jersey over News America's competitive tactics. Both sides were represented by sophisticated counsel and prosecuted the matter vigorously. Prior to trial, both the court and its own attorneys encouraged FGI to settle. FGI made an initial demand of approximately $65 million in October 2008; News America countered with an offer of $5 million. Shortly before trial, FGI proposed a stock sale of FGI to News America, which rejected the stock sale and proposed an asset sale. However, by the beginning of trial in March 2009, News America had withdrawn all its prior settlement offers.

Once trial in the New Jersey matter began, it was apparent to George Rebh and FGI's counsel that things were not going well for FGI. On the advice of counsel, FGI began negotiating a transaction with News America. On March 6, 2009, the parties agreed to an asset purchase for $29.5 million. News America insisted on the following components to the agreement: (1) that the transaction take the form of an asset sale; (2) that FGI and News America execute a mutual release; (3) that none of the proceeds be allocated to settlement of the New Jersey litigation; (4) that FGI execute a non-compete agreement; and (5) that the Rebhs, Anidjar and Devlin enter

into personal agreements with News America, including a seven-year non-compete agreement, personal releases and one-year consulting agreements.

Richard Rebh made a preliminary allocation of the $29.5 million as follows: (1) $13 million to FGI for assets and inventory; (2) $12 million to the purchase of the Individual Defendants' goodwill; (3) $4.452 million to non-compete agreements with the Individual Defendants; and (4) $48,000 to consulting agreements with the Individual Defendants. News America, however, required that FGI obtain a "true-up" of the preliminary allocation from a nationally recognized valuation appraiser acceptable to News America. FGI obtained the services of Ladenburg Thalmann & Co., Inc., which had not previously provided services to either FGI or News America. Ladenburg prepared its appraisal based solely on information provided to it by FGI and submitted a final allocation dividing the proceeds as follows: (1) $9.614 million to FGI for assets and inventory; (2) $17.086 million to the purchase of the Individual Defendants' goodwill; (3) $3.081 million to non-compete agreements with the Individual Defendants; and (4) $48,000 to consulting agreements with the Individual Defendants. Ultimately, Rebh decided to proceed with the original allocation, which allotted more of the proceeds to FGI. The money allocated to FGI was retained for reinvestment in other ventures rather than distributed to shareholders.

On March 23, 2009, Potok, individually and on behalf of other minority shareholders, filed the instant suit in equity, in which he alleged claims of breach of fiduciary duties by the Individual Defendants, aiding and abetting

the Individual Defendants in their breach of fiduciary duties by News America, and conspiracy to breach fiduciary duties by the Individual Defendants and News America.

Following the completion of discovery, both the Individual Defendants and News America filed for summary judgment. By order of March 5, 2012, the trial court granted News America's summary judgment motion and entered judgment in favor of News America. The court granted the Individual Defendants' motion in part, precluding Potok from attempting to prove at trial that the New Jersey litigation could have been resolved for more than $29.5 million. The rest of the Individual Defendants' motion was denied, and the remaining parties proceeded to trial.

After the Individual Defendants and Potok submitted their proposed findings of fact and conclusions of law, the trial court issued its Findings of Fact, Conclusions of Law and Opinion on September 16, 2014, in which it concluded as follows: (1) the overall purchase price of $29.5 million was reasonable under the circumstances; (2) the allocations to the Individual Defendants for the non-compete agreements and consulting services were reasonable; (3) the valuation of the retailer contracts was reasonable; and (4) the allocation of $12 million to "personal goodwill" was improper, both economically and legally. *See* Trial Court Opinion, 9/16/14, at 28-29. The court concluded that the Individual Defendants were unjustly enriched and, as such, had breached their fiduciary duties. *Id.* at 61. Accordingly, the court ordered the Individual Defendants to pay the $12 million originally

allocated to "personal goodwill" to FGI (rather than directly to its shareholders), as such a remedy "negate[d] the need for a further hearing." *Id.* at 62.

The parties filed post-trial motions, in response to which the trial court issued an order modifying and clarifying its September 16, 2014 order.[2] Judgment was entered on January 21, 2015 by *praecipe*. Potok and the Individual Defendants filed cross-appeals to this Court.

This Court held oral argument on June 29, 2016. Subsequent thereto, on October 31, 2016, Potok and the Individual Defendants filed a joint application for a partial stay, in which they stated that they had engaged in negotiations and made substantial progress toward a settlement. As a result, this Court granted a stay. Potok and the Individual Defendants eventually reached an agreement, which rendered moot the appellate claims raised by Potok and the Individual Defendants with respect to each other. Accordingly, the only claim remaining for us to resolve is Potok's assertion

---

[2] The court's order was modified to require that the Individual Defendants only be required to disgorge the net proceeds they received for "personal goodwill," after deduction of counsel fees, escrow fees and amounts held in escrow, rather than the gross amount attributable to each Individual Defendant as listed in the original order. The court also clarified, with respect to its verdict on Count IV (breach of fiduciary duty), that Individual Defendant Michael Devlin was not an officer of the company and, therefore, could not be held liable on that count. The court further changed its ruling on Count V (conspiracy) to find that the Individual Defendants did conspire with each other to breach (or in the case of Devlin, to aid and abet in the breaching of) their fiduciary duties. Finally, the court assessed pre-judgment interest at a rate of 3.25%.

that the trial court erred as a matter of law in granting summary judgment in favor of News America "based on the [c]ourt's erroneous finding that there was no evidence that News America had any knowledge of any breach of fiduciary duty by the Individual Defendants[.]"  Potok's Brief, at 7.

We review the grant of summary judgment using the following scope and standard of review:

> Our scope of review is plenary, and our standard of review is the same as that applied by the trial court.  Our Supreme Court has stated the applicable standard of review as follows:  An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that . . . the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  As our inquiry involves solely questions of law, our review is *de novo*.
>
> Thus, our responsibility as an appellate court is to determine whether the record . . . contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder.  If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Reinoso v. Heritage Warminster SPE LLC***, 108 A.3d 80, 84 (Pa. Super. 2015) (citations and brackets omitted).

Pursuant to the Rules of Civil Procedure, summary judgment may be granted if, "after the completion of discovery . . . an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action[.]"  Pa.R.C.P. 1035.2(2).   "Parties seeking

to avoid the entry of summary judgment against them may not rest upon averments contained in their pleadings; rather, they are required to show, by depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial[.]" ***Overly v. Kass***, 554 A.2d 970, 972 (Pa. Super. 1989). Summary judgment is proper when the plaintiff has failed to establish an element necessary to its case. ***Eckenrod v. GAF Corp.***, 544 A.2d 50, 52 (Pa. Super. 1988). "Whether direct or circumstantial evidence is relied upon, our inquiry, under a motion for summary judgment, must be whether plaintiff has pointed to sufficient material facts in the record to indicate that there is a genuine issue of material fact[.]" ***Id.*** at 53.

In order to establish News America's liability for aiding and abetting the Individual Defendants' breach of fiduciary duty, Potok was required to prove the following: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach. ***Koken v. Steinberg***, 825 A.2d 723, 732 (Pa. Cmwlth. 2003), citing ***Thompson v. Glenmede Trust Co.***, 1993 WL 197031 at 7 (E.D. Pa. 1993).[3] The second element requires actual knowledge of the breach.

---

[3] To date, the Commonwealth Court is the highest appellate court which has recognized aiding and abetting a breach of fiduciary duty as a cause of action in this Commonwealth. ***See Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP***, 989 A.2d 313, 327 n.14 (Pa. 2010). The
*(Footnote Continued Next Page)*

*Mitchell Partners, L.P. v. Irex Corp.*, 2010 WL 3825719, at *9 (E.D. Pa. 2010), *rev'd in part on other grounds*, 656 F.3d 201 (3d Cir. 2011) (noting Commonwealth Court decision in **Koken** and predicting Pennsylvania Supreme Court would recognize cause of action for aiding and abetting breach of fiduciary duty).

In granting summary judgment, the trial court concluded that Potok failed to present evidence that News America was aware of any breach by the Individual Defendants of their fiduciary duties to FGI and/or the minority shareholders. The court noted:

> [T]here is no evidence News America knew the allocation of the $29.5 million was improper. Instead, the evidence shows the [Individual Defendants] provided News America with an allegedly independent appraiser's report showing FGI's assets were worth

*(Footnote Continued)* ───────────

cause of action is grounded in section 876 of the Restatement (Second) of Torts, which provides as follows:

§ 876 Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876.

less than the $13 million News America paid for them. The evidence also shows News America made its own independent business decision not to allocate any of the $29.5 million to settlement of the [New Jersey] lawsuit.

Trial Court Opinion, 3/6/12, at 6-7. The court further declined to impose a duty on News America to conduct its own investigation to determine the fairness of the Individual Shareholders' proposed allocation. Consequently, having concluded that Potok could not prevail against News America as a matter of law, the court granted summary judgment in favor of News America and dismissed Potok's claim against it.

Potok argues that, because his claims against News America turned on a question of the state of mind of News America – i.e., whether it knew that the Individual Defendants were breaching their fiduciary duty to FGI – summary judgment was inappropriate. Citing **Nanty-Glo v. American Surety Company**, 163 A. 523 (Pa. 1932), Potok argues that testimonial evidence may not be the only basis upon which summary judgment is entered and that "[t]his case is replete with circumstantial evidence – including the improper self-dealing inherent in the terms of the transaction – that supports a compelling inference that News America *knew* that the Individual Defendants were" in breach of their fiduciary duties when they entered into the transaction. Potok's Brief, at 25. Potok asserts that the structure of the transaction itself is "compelling evidence" that News America was aware of the Individual Defendants' fiduciary breach. He characterizes the transaction as an "illicit quid pro quo" in which News America essentially bribed the Individual Defendants to agree not to allocate any funds to the

settlement of the New Jersey litigation – thus allowing News America to escape exposure to significant damages – by agreeing to an allocation that disproportionately benefited the Individual Defendants.

In response, News America asserts that Potok is unable to cite to any record evidence to support his claim that News America was aware of, and participated in, the Individual Defendants' breach. It claims that summary judgment was proper, as "a jury may not be permitted to reach its verdict on the basis of speculation or conjecture." News America Brief, at 26, quoting *InfoSage, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 606, 626 (Pa. Super. 2006). With respect to *Nanty-Glo*, News America asserts that not only did it rely on both testimonial and documentary evidence in its summary judgment motion, but Potok also failed to present any affirmative evidence in support of his own claim. Finally, News America argues that the structure of the transaction does not lend itself to an inference that News America knew the Individual Defendants were in breach of their fiduciary duties. To the contrary, News America asserts that it "had legitimate business reasons for entering into the asset purchase transaction – namely, to acquire the contracts of its market competitor and non-compete restrictions on its direct competitor's principals – and the transaction, properly, furthered that interest." News America's Brief, at 35-36.

We agree with News America and the trial court that Potok has produced no evidence to prove that News America had actual knowledge that the Individual Defendants were in breach of their fiduciary obligations to

FGI or its minority shareholders and, thus, would be unable to prevail at trial.

> When a motion for summary judgment is based on insufficient evidence to support the factual basis for the cause of action or defense, the non-moving party must come forward with sufficient evidence essential to preserve the cause of action. The evidence adduced by the non-moving party must be of such a quality that a jury could return a favorable verdict to the non-moving party on the issue or issues challenged by a summary judgment request. As our Supreme Court has observed:

>> Allowing non-moving parties to avoid summary judgment where they have no evidence to support an issue on which they bear the burden of proof runs contrary to the spirit of [Pennsylvania Rules of Civil Procedure 1035.1-.5]. We have stated that the "mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case (or, in some matters, issues in a case) where the party lacks the beginnings of evidence to establish or contest a material issue. . . . Forcing parties to go to trial on a meritless claim under the guise of effectuating the summary judgment rule is a perversion of that rule.

>> * * *

>> Thus, we hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor.

*InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 625–26 (Pa. Super. 2006), quoting *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996) (internal citation omitted).

Potok argues that the case is replete with circumstantial evidence in the form of inferences to be drawn from (1) the structure of the transaction

itself and (2) News America's demand for indemnification from FGI. However, a distinction must be made between evidence-based inference, on the one hand, and speculation and conjecture, on the other. Here, Potok can point to no evidence to support its allegation of an "illicit quid pro quo" between News America and the Individual Defendants. He likewise produced no evidence of collusion between the parties. While he attributes nefarious motives to News America's demand that no funds be allocated to the settlement of the New Jersey litigation, he can point to no evidence – beyond mere speculation – that News America's demand was anything but self-interested. Indeed, the evidence of record demonstrates that News America's requirements for the transaction were, fundamentally, three-fold: (1) to eliminate its main competitor via asset (rather than stock) purchase; (2) to allocate no proceeds to settlement of the New Jersey litigation; and (3) to ensure that the final allocation of the proceeds was objectively reasonable. News America was indifferent regarding the manner in which the Individual Defendants chose to allot the proceeds as amongst themselves and FGI, so long as the allocation was objectively reasonable as determined by an independent appraiser.

The cases Potok relies upon are inapt. Potok cites **Crescent/Mach I Partners, L.P. v. Turner**, 846 A.2d 963 (Del. Ch. 2000), for the proposition

that "[a] court should[4] 'infer a non-fiduciary's knowing participation [when] a fiduciary breaches its duty in an inherently wrong manner, and the plaintiff alleges *specific* facts from which that court could reasonably infer knowledge of the breach.'" Potok's Brief, at 28, quoting **Crescent**, 846 A.2d at 990 (emphasis in **Crescent**). Similarly, in **In re USACafes**, 600 A.2d 43 (Del. Ch. 1991), the court "inferred that a purchaser knowingly induced the sellers' fiduciaries to breach their duties [where] the personal consideration offered to them represented a significant percentage of the total transaction value." Potok's Brief, at 28. However, both of these cases were decided in the preliminary stages on motions to dismiss. Thus, they do not speak to the issue before this Court, which is the quantum of evidence necessary to survive summary judgment. Finally, Potok relies on **In re Del Monte Foods Co. Shareholder Litig.**, 25 A.3d 813 (Del. Ch. 2011), for the proposition that an acquirer "may not knowingly participate in the target board's breach of fiduciary duty by extracting terms which require the opposite party to prefer its interests at the expense of its shareholders." **Id.** at 837. Here, however, there is no evidence to show that News America "extracted" any terms from the Individual Defendants that "required" them to prefer their own interests over those of Potok and the minority

---

[4] In his brief, Potok inserts the imperative "should" before the excerpt from the **Crescent** court's opinion. The court used the permissive "may."

shareholders, including not allocating any money to the settlement of the New Jersey lawsuit.

Finally, we note that the trial court's dismissal on summary judgment did not violate **Nanty-Glo**. Indeed, the trial court's decision rested largely on the independent appraiser's report, which News America itself had required as a condition of the transaction based on tax considerations. The court noted that the appraiser's allocation was, in fact, more favorable to the Individual Defendants, yet the Individual Defendants opted to use the initial allocation, which was more advantageous to Potok and the minority shareholders. This scenario does not support an inference that News America knew that the allocation constituted a breach of duty by the Individual Defendants; in fact, it suggests the opposite.

In sum, Potok has failed to produce evidence that would allow a jury to find that News America knowingly participated in the Individual Defendants' breach of their fiduciary duties. **Reinoso**, **supra**. Accordingly the trial court properly entered summary judgment in favor of News America.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/13/2017